CHARLES W. RICHARDSON, administrator with the will annexed, *vs.* HARRIET P. MULLERY & others.

Essex.    November 4, 1908. — November 24, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Charity,* Administration *cy pres.*    *Trust.*

A testatrix bequeathed the residue of her estate, at the termination of a life interest, "to be given to the life saving station to be built and established in Marblehead or Nahant, not yet decided upon." The residue amounted to about $6,000. When the will was made the testatrix knew of the intention of the United States government to establish a life saving station in the neighborhood of Nahant. At that time a life saving station had been completed at Nahant, although it did not go into commission until six months later. This station was about four or five miles from the nearest part of the shore of Marblehead. No life saving station has been established at Marblehead and no such establishment is contemplated. The treasurer of the United States filed in the case a disclaimer of any interest in the residue of the estate of the testatrix, by which it appeared that the United States declined the trust. *Held,* that the purpose of the testatrix in devoting her gift to the life saving station was not limited to the maintenance of the station itself, which was the specific object named in the will, but was a charitable wish to be helpful in the general saving of life and relief of suffering in cases of shipwreck in the vicinity of Nahant and Marblehead, and therefore that the gift created a public charity for a general charitable purpose, which, as its administration in the precise way stated in the will had become impossible, would be administered *cy pres,* under a scheme, to be devised by or under the direction of the Probate Court.

BILL IN EQUITY, filed in the Probate Court for the county of Essex on April 5, 1906, by the administrator *de bonis non* with the will annexed of the estate of Harriet M. King, late of Salem, for instructions as to the construction of the residuary clause of that will.

In the Probate Court *Harmon,* J., made a decree appointing trustees to receive the residue for the benefit of the United States Life Saving Station at Nahant and ordering the plaintiff

as administrator with the will annexed to pay over the residue to such trustees. The decree also contained directions for the guidance of the trustees. The defendants Mullery and Guion, who were nieces of the testatrix claiming as her next of kin, appealed.

The case came on to be heard before *Morton*, J., who, at the request of the parties, reserved it upon the bill, the answers of the several defendants and an agreed statement of facts for determination by the full court, such decree to be entered as law and justice required.

*F. M. Ives*, for the defendants Mullery and Guion.

*D. Malone*, Attorney General, *& F. T. Field*, Assistant Attorney General, for the Attorney General, submitted a brief.

KNOWLTON, C. J. The petitioner asks for instructions as to the effect of this clause in the will of Harriet M. King, late of Salem, deceased : " I give and bequeath the rest and residue of my estate to my sister, Eliza A. Hoffman, for her use during her life ; at her death to be given to the life saving station to be built and established in Marblehead or Nahant, not yet decided upon." The holder of the interest for life having deceased, the question is what shall now be done with the residue, which amounts to about $6,000. It appears by the agreed facts that, when the will was made, the testatrix knew of the intention of the United States government to establish a life saving station in the neighborhood of Nahant. Her will was made on March 19, 1900, and the construction of the life saving station at Nahant was completed on February 18 of the same year, although it is averred in the bill and not denied in the answer that the station did not go into commission until September 13, 1900. This station is on the shore at Nahant, about four or five miles across the bay from the nearest part of the shore of Marblehead. No life saving station has been established at Marblehead and none is contemplated by the United States government or the officers having the life saving service in charge. This station is maintained under the authority of the secretary of the treasury of the United States, acting under a law of the United States. " The building of the station is an accomplished fact and there is no doubt that it will always be maintained by the government." The Congress of the United States has taken no action towards the acceptance of

the legacy, and the secretary of the treasury has filed in the case a disclaimer of any interest in the residue of the estate of the testatrix. The keeper and crew of six or seven men live in the station, and the keeper has quarters for his family there. No provision is made for the families of the men of the crew.

The gift is " to the life saving station to be built and established," etc. This is equivalent to a gift to the proprietor or proprietors of the life saving station, for the benefit of the station. The charitable nature and object of the gift, and the fact that its benefits are to extend generally to all the members of the class or classes for whose benefit the life saving station is established, make it a public charity. *Johnstone* v. *Swann*, 3 Madd. 457. *Fire Insurance Patrol* v. *Boyd*, 120 Penn. St. 624. *Minns* v. *Billings*, 183 Mass. 126, 129. *Jackson* v. *Phillips*, 14 Allen, 539, 556. *Drury* v. *Natick*, 10 Allen, 169, 178. *Attorney General* v. *Shrewsbury*, 6 Beav. 220. *Attorney General* v. *Day*, [1900] 1 Ch. 31. *Coggeshall* v. *Pelton*, 7 Johns. Ch. 292. *Hamden* v. *Rice*, 24 Conn. 350. *Stuart* v. *Easton*, 74 Fed. Rep. 854. If the United States government, by act of Congress, had accepted the trust, the money would have been paid over to be used for the maintenance and support of the life saving station, in a way to make it as beneficial as possible to those for whose safety and protection it was established. But the United States declines to accept the trust. See *Dickson* v. *United States*, 125 Mass. 311; *State* v. *Blake*, 69 Conn. 64. The management and control of the station is in its owner, the United States government, and no one else can interfere with it. If a trustee were to be appointed by the court to execute the trust, he could not use the money in the way in which the testatrix intended it to be used for the maintenance and support of this station.

The trust has, therefore, become impossible of execution in the exact way contemplated by the testatrix, and we come to the question whether it must fail altogether, or whether it can be administered *cy pres*. That depends upon whether the trust created by the testatrix is limited to the direct maintenance and support of this station by the expenditure of money in aid of the government for that purpose, or whether the charitable purpose was broader, and was intended to include the promotion of the general interests which the station was designed to serve, and kin-

dred interests in furtherance of a purpose to be helpful in this general field. The question that arises in cases of this kind is often hard to answer, and in the present case it is not free from difficulty. We are of opinion that the desire and purpose of the testatrix in devoting her gift to the life saving station was not limited to the maintenance of the station itself, which is the specific object named in the will, but was a charitable wish to be helpful to persons exposed to the perils of the sea in this neighborhood. We think the precise method of accomplishing her purpose stated in the will was not so important in her thought as the general saving of life and relief of suffering in cases of shipwreck in the vicinity of Nahant and Marblehead. As we interpret the language of the will, any reasonable method of promoting this object was within her general purpose. There may be ways of promoting this object other than by aiding in the maintenance of the station in the way in which the United States government chooses to maintain it. Methods may be adopted for rendering the dangerous service more attractive to the brave men who are needed in it, either by making provision for themselves or their families in case of their misfortune, or in other ways. Or some other scheme may be devised for the use of the money which will be within this general charitable purpose of the testatrix.

The charity should be administered under the doctrine of *cy pres*, under a scheme to be devised by or under the direction of the Probate Court. *Attorney General* v. *Briggs*, 164 Mass. 561. *Weeks* v. *Hobson*, 150 Mass. 377. *Theological Educational Society* v. *Attorney General*, 135 Mass. 285. *Jackson* v. *Phillips*, 14 Allen, 539. Most if not all of the methods of expenditure particularly proposed in the decree of the Probate Court would not be improper for embodiment in such a scheme.

*So ordered.*