JOHN S. McELWAIN & others, trustees, *vs.* ATTORNEY GENERAL & others.

Hampshire.   November 7, 1921.—March 9, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Trust*, Construction, Disposition of increase in principal, *Cy pres. Equity Jurisdiction*, Bill for instructions. *Words*, "Heirs at law."

A trust fund of $112,500 was constituted by a will and the trustee was directed to pay among certain named beneficiaries for charitable purposes the net income of designated amounts which in the aggregate equalled the entire sum; and, after the death of certain persons, he was directed to "pay over" the $112,500, "with any undistributed interest accrued thereon" to the same beneficiaries and for the same purposes, an amount being set opposite the name of each in the will which was the same as that designated as the sum of which it previously was to receive the income, and the sum of all of such amounts equalling $112,500. During the life estates, the principal of the fund had greatly increased in value. The will disposed of all the property left by the testator and there was a residue clause. *Held*, that

(1) No presumption of intestacy arose;

(2) While the testator may not have contemplated the rise in value of the securities or other property of which the fund consisted at his death or in which it might be subsequently invested, he intended that portion of his estate to be devoted to the purposes designated;

(3) The increase in value of the principal should be distributed among the beneficiaries in amounts proportionate to those designated in the will.

The trustee under a will has power and authority to appropriate and dispose of a

sum of $1,500 which by the will he is "authorized to appropriate and dispose of at" his "discretion."

A will directed that the trustee thereunder apply the income of $500 for "the adornment and improvement of" a certain public cemetery. The cemetery afterwards was abandoned and the testator's body was removed to another cemetery where a suitable memorial had been erected. Upon a bill by the trustee for instructions, it was *held*, that the designation of the public cemetery by the testator was incidental and not primary and that his purpose could be accomplished by application of the income for the "adornment and improvement" of the public cemetery where his remains had been reinterred; and that a scheme for such administration should be devised by the Probate Court.

A direction in a will that in certain contingencies a portion of the principal of a trust "with all the unexpended income thereof, which shall remain" be distributed among the "heirs at law" of a certain niece, required the payment upon the happening of the contingencies of a proper proportion thereof to the niece's husband who, with four children, survived her; and where, during a delay in the distribution, the husband died, the administrator of his estate should receive that portion of the principal properly apportionable to him with the unexpended income thereon.

The income, which had accrued during the life of the niece of the testator above described and which was not paid to her during her life, the trustee was directed to pay to her heirs at law.

In a bill for instructions trustees under a will had asked specifically for such directions as might be necessary for them to perform their present duties. They also asked "for such other and further directions and relief, as may be found necessary to enable them to make a proper distribution of all trust funds in their hands, as trustees aforesaid, and for their full protection in making such distribution." *Held*, that if unanticipated complications arose, resort could be had to the court for additional instructions.

BILL IN EQUITY, filed in the Probate Court for the county of Hampshire on March 18, 1921, by the trustees under the will of Whiting Street, late of Northampton, for instructions.

Material portions of the will of Whiting Street provided in substance as follows:

"Item 5. I give and bequeath to the persons hereinafter named as Trustees under this Will, the sum of One Hundred and Twelve Thousand Five Hundred (112,500.) Dollars, to hold, strictly in trust, for the following uses and purposes, and subject to the following conditions and limitations, viz.

"1st. To pay to the Inhabitants of the following named towns and city, all in the Commonwealth of Massachusetts, respectively, in their corporate capacity as towns and city, in trust, for the relief and comfort of the worthy poor of said towns and city who shall not be in the Almshouse, nor be town or city paupers as follows.

[Here follow the names of twenty-one towns and one city each

followed by a specification of a sum, the "net annual income" of which the municipality was to receive. The entire principal, the income of which thus was disposed of, amounted to $106,000.]

"2d. To pay to the First Congregational Society in Holyoke the net annual income of Five Thousand (5,000.) Dollars.

"3d. To apply the net annual income of Five Hundred (500.) Dollars for the adornment and improvement of the Cemetery in Holyoke, which is located on the highway leading from Northampton to Holyoke.

"4th. To apply the net annual income of One Thousand (1,000.) Dollars, to the support and maintenance of the Catholic Orphan Institution situated on Dwight Street in Holyoke, called 'The House of Providence.'"

"Item 6. After the payment of the legacies above named, all the residue of my estate of every description, real and personal, I give, devise and bequeath to [certain named persons] . . . and to their successors, as Trustees, to hold the same, strictly in Trust, for the following uses and purposes, and subject to the following conditions and limitations, viz.

[Paragraph 1 of item six provided for the payment of the income and part of the principal of one third of the trust fund constituted by that item for the benefit of the testator's grand nephew, Whiting Bradley Street and Mrs. Nancy Perkins, both of whom were alleged by the plaintiffs to have died, and that, upon the death of both of them, "all the residue and remainder thereof shall be added to the remaining two thirds (or six ninths) of the aforesaid residue of my estate."]

[Paragraph 2 of item 6 provided that the trustees should apportion the net income of two thirds of the trust fund constituted by the item to three nieces of the testator, one of whom was Harriet Adaline Street, afterwards married to Joseph E. Houston, who with four children survived her. This paragraph closed as follows:]

"And upon the occurrence of the death of either of my said nieces, the said Trustees shall annually pay over to her heirs at law the income of the two-ninth parts of said residue; and when Whiting Bradley Street, Mrs. Nancy Perkins, . . . [and the three nieces] shall all have deceased, the said Trustees shall pay over to the heirs at law of each niece, the two-ninth parts of said residue, the use [of] which for her life is given to her by this Will,

together with all the unexpended income thereof, which shall remain at the time of her death.

"Item 7.   As soon as the said Whiting Bradley Street, Mrs. Nancy Perkins, and the three nieces shall all have deceased, the aforesaid sum of One Hundred and Twelve Thousand Five Hundred (112,500.) Dollars, given to the Trustees under this Will, in trust, with any undistributed interest accrued thereon, shall be paid over by said Trustees, as follows.

"To the Inhabitants of the following named towns and city, to each town in its corporate capacity as a town, and to the city in its corporate capacity as a city, in trust, the income thereof to be annually appropriated for the relief and comfort of the worthy poor of said towns and city, who shall not be in the Almshouse, nor be town or city paupers.

[Here followed the names of the city and twenty-one towns designated under the first paragraph of item 5, with the same amount set opposite each name as was named in item 5 to designate the principal whose income was to be paid thereunder.  This paragraph and item then continued:]

"To the First Congregational Society of Holyoke, the sum of Five Thousand (5,000.) Dollars, in trust, on [certain conditions not now material.] . . .

"The remaining part of said sum of One Hundred and Twelve Thousand Five Hundred (112,500.) Dollars, to wit, the sum of Fifteen Hundred (1,500.) Dollars, said Trustees are authorized to appropriate and dispose of at their discretion."

Other material allegations in the bill are described in the opinion. Instructions were sought on the following questions:

"First.   Who are entitled to receive the increment or increase in the capital of the trust fund of $112,500?

"Second.   Have the petitioners authority to appropriate and dispose of said sum of fifteen hundred, its increment and income, as they have hereinbefore proposed and desire to do, as donees of the power given them in said Item 7?

"Third.   Was the said Joseph E. Houston entitled to receive during the time he lived after the death of his wife, said Harriet A. S. Houston, one-third or any part of the income his wife would have received had she been living during that period?

"Fourth.   Is the legal representative of said Joseph E. Houston,

viz: — said Vena M. Houston, entitled to receive one-ninth or any part of the residuary trust fund held by your petitioners under Item 6 and if so, how much?

"Fifth.    Is any portion of the trust estate now held by said trustees, and especially the excess of principal held by them under Item 5 and 7 on account of its increase over $112,500., intestate estate, and if so, is it the duty of said trustees to pay such excess to the surviving executor of said will?

"Sixth.    Is it the duty of the Trustees to pay the income, which had accrued during the life of said Harriet Adaline (Street) Houston on her said two-ninths of the residue and which was not paid to her during her life, to her legal representative as a part of her estate, or to her heirs at law?

"Seventh.    Your petitioners pray for such other and further directions and relief, as may be found necessary to enable them to make a proper distribution of all trust funds in their hands, as trustees aforesaid, and for their full protection in making such distribution.

"Eighth.    Are the municipalities and other beneficiaries named in said will in items 5 and 7 entitled to receive the legacies conditionally given to them therein and if so how much is each entitled to receive?"

The suit was heard by *Bassett,* J., who found that all the municipalities had complied with certain conditions imposed in the will; that Joseph E. Howard had died on March 21, 1920, and reserved and reported the case for determination by this court.

The case was submitted on briefs.

*A. J. Morse,* for the city of Northampton.

*T. C. Mahar,* for the city of Holyoke.

*J. F. Carmody,* for the city of Chicopee.

*J. Hildreth,* for the defendant Henry S. Houston.

*H. B. Patrick,* for the defendant Clarissa S. H. Chapman.

*A. L. Green & F. F. Bennett,* for the defendant Maude H. Phelps and others.

Braley, J.    This is a bill in equity brought by the trustees for instructions concerning the final distribution of the estate under the will of Whiting Street.    The purpose and intention of the testator will be considered under the discussion of the questions propounded in the record.

The first inquiry is, "Who are entitled to receive the increment or increase in the capital of the trust fund of $112,500?" The testator by the fifth item created a fund of $112,500 to be held in trust as shown by the seventh item during the life of the persons named in the sixth item, the net annual income thereof after applying the amount named in the third and fourth paragraphs, to be divided and paid to the beneficiaries, who are specifically named, with the amount of income coming to each, to be used by the municipalities "for the relief and comfort of the worthy poor of said towns and city who shall not be in the Almshouse, nor be town or city paupers. . . ." The beneficiaries for life under the trust established by the sixth item having died, the seventh item immediately became operative. This item provides that "the aforesaid sum of . . . (112,500.) Dollars, given to the Trustees under this Will, in trust, with any undistributed interest accrued thereon, shall be paid over by said Trustees, as follows. To the Inhabitants of the following named towns and city, to each town in its corporate capacity as a town, and to the city in its corporate capacity as a city, in trust, the income thereof to be annually appropriated for the relief and comfort of the worthy poor of said towns and city, who shall not be in the Almshouse, nor be town or city paupers." The towns and city are then named with the amount to be paid each legatee, followed by a bequest in trust to the First Congregational Society of Holyoke, and a bequest to the trustees to "dispose of at their discretion."

It appears that the will disposed of all the property of the testator which he possessed at his death, and there being a residuary clause no presumption of intestacy arises. *Batchelder, petitioner*, 147 Mass. 465, 468. *Boston Safe Deposit & Trust Co.* v. *Coffin*, 152 Mass. 95, 99. *Jones* v. *Gane*, 205 Mass. 37, 43. *Williams* v. *Punchardt*, 217 Mass. 237. The trustees invested $112,500 which they treated and kept separate from the trust fund held by them under the sixth item. The principal however is stated to have so increased in value as to be greatly in excess of that amount, and the question is whether the increment is to be distributed as capital, or there is a resulting trust in favor of the heirs at law of the testator living at his death. If the excess or increment consisted of "undistributed interest" the terms of the will would be exactly applicable. The testator created and endowed a charity.

While he may not have contemplated the rise in value of the securities or other property of which the fund consisted at his death, or in which it might be subsequently invested, he intended that portion of his estate to be devoted to the purpose designated. It is a single fund, the whole of which constitutes the principal named in the will. *Minot* v. *Baker,* 147 Mass. 348. *Claflin* v. *Dewey,* 177 Mass. 166, 169. *Green* v. *Crapo,* 181 Mass. 55. It appearing that all of the legatees have complied with the terms and conditions concerning the acceptance of the gift, and its use for the objects designated, the trustees are instructed to make distribution among the legatees, adding to the sum specifically named for each a proportionate amount of the increment to be determined by the percentage which the entire increment bears to the original principal.

The testator having also in the seventh item authorized the trustees to appropriate and dispose of the sum of "Fifteen Hundred . . . Dollars" at their discretion, the question whether they can so appropriate and dispose of "said sum of fifteen hundred, its increment and income . . . as donees of the power . . ." is answered in the affirmative.

The cemetery described in the fifth item "for the adornment and improvement of" which the testator directed the net annual income of "Five Hundred . . . Dollars" to be applied has long since been abandoned, and his body removed to another cemetery where a suitable memorial has been erected. The testator intended that the public burial place where his body was buried should be maintained in good order and condition and the bequest therefore is charitable. *Bates* v. *Bates,* 134 Mass. 110. *Moore* v. *Natick,* 176 Mass. 510, 513. The designation of the public cemetery named by him being incidental and not primary, his purpose can be accomplished by application of the income for the "adornment and improvement" of the public cemetery where his remains have been reinterred. A scheme for such administration is to be devised by the court of probate. G. L. c. 215, § 6. *Richardson* v. *Mullery,* 200 Mass. 247.

By the sixth item Harriet Adaline Street, a niece of the testator, who is given a two ninths share during her life in the net income of the residuary trust fund there established, having pre-deceased Joseph E. Houston whom apparently she married after the tes-

tator's death, the trustees ask whether he was "entitled to receive during the time he lived after the death of his wife . . . the income his wife would have received had she been living during that period." By the second paragraph of the sixth item, ". . . upon the occurrence of the death of either of my said nieces, the said Trustees shall annually pay over to her heirs at law the income of the two-ninth parts of said residue; and when Whiting Bradley Street, Mrs. Nancy Perkins, Eliza Smith, Polly Ann Houston and Harriet Adaline Street shall all have deceased, the said Trustees shall pay over to the heirs at law of each niece, the two-ninth parts of said residue, the use [of] which for her life is given to her by this Will, together with all the unexpended income thereof, which shall remain at the time of her death." Harriet Adaline Street Houston having been the last surviving niece, at her death the trustees were required to make distribution as directed by the testator by paying "over to the heirs at law of each niece," among whom Joseph E. Houston would be included as an heir of his wife "the two-ninth parts of said residue" with all income unexpended at the date of her death. *Gray* v. *Whittemore*, 192 Mass. 367. *Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass. 35. As Joseph E. Houston immediately on the death of his wife became entitled in common with Maude H. Phelps, Vena May Houston, Ada Josephine Houston and Paul Leon Houston, children of the marriage, to one fifth part of the fund, the income thereafter accruing from the death of Adaline Street Houston to his own death on that part belonging to him not having been paid in his life time, is to be paid by the trustees to his administratrix. See *McElwain* v. *Hildreth*, 203 Mass. 376, 379.

"Is it the duty of the Trustees to pay the income, which had accrued during the life of said Harriet Adaline (Street) Houston of her said two-ninths of the residue and which was not paid to her during her life, to her legal representative as a part of her estate, or to her heirs at law?" The trustees are instructed to make payment to her heirs at law.

The seventh prayer is, "for such other and further directions and relief, as may be found necessary to enable them to make a proper distribution of all trust funds in their hands, as trustees aforesaid, and for their full protection in making such distribution." The trustees having asked specifically for such directions,

which have been given, as may be necessary to enable them to perform their present duties, nothing further is required. If unanticipated complications arise, resort can be had to the court for additional instructions. *Peabody* v. *Tyszkiewicz,* 191 Mass. 317.

It having been determined that "the municipalities and other beneficiaries named in" the fifth and seventh items are "entitled to receive the legacies conditionally given to them," the necessary arithmetical computations called for under the eighth question can be made by the trustees, and the form and details of the decree in accordance with this opinion settled in the court of probate, with costs taxed on the fund as between solicitor and client.

*Ordered accordingly.*