MURR, Trustee, Plaintiff, v. YOUSE, et, Defendants.

Probate Court, Montgomery County.

No. 104277.   Decided July 15, 1946.

322

Murr & Murr, Dayton, for plaintiff.
Warren E. Slifer, for Board of Education, Germantown.
Bessie D. Moore, Dayton, for Ada Youse.
Landis, Ferguson, Bieser & Greer, Dayton, for Wilbur G. Kennedy and Martha Hooven.
Walter H. Early, for Anna Tyrell, et al.
William M. Pettit, Dayton, for Mary Katherine Trout and Marie Sucher McClarney.

**OPINION**

By LOVE, J:

This matter comes on to be heard on a petition for declaratory judgment brought by Byron Murr as trustee of and for the beneficiaries under the will of Jacob S. Antrim, deceased, the answer of certain of the defendants, the evidence, and briefs of counsel.

Jacob S. Antrim died on January 26, 1901, and his last Will and Testament was duly probated by this Court on February 7, 1901 and is recorded in Will Record Z, page 21. He was survived by his widow, Carrie Y. Antrim, who died May 27, 1945.

That portion of the will this Court must construe in order to declare legal rights as propounded by the plaintiff is Items 6th and 7th which provide as follows:

"Item 6th: All the rest and residue of my estate, both real and personal, I direct that my Executor manage and care for and keep invested, as hereinafter provided, so far as he is able, during the natural life of my wife, Carrie Y. Antrim, and the net proceeds arising therefrom to be divided as follows:

"One hundred and fifty. (150) dollars per year, payable annually, to my brother, Cyrus Antrim.

"Seventy-five (75) dollars a year to my sister, Katura Eckert; and the balance of said net income to be given absolutely to my wife, Carrie Y. Antrim, during her natural life.

"Item 7th: at the death of my said wife, Carrie Y. Antrim, I desire that my estate be closed up and that my Executor proceed to sell all real-estate then on hand belonging to my estate, and to collect all credits due the same, and to divide the proceeds as follows:

"To my brother-in-law, Charles Yhous, I give and bequeath the sum of Five Thousand (5000) dollars, in consideration of his having given up his position and coming to Dayton for the purpose of caring for me in my illness at one time, and in looking after my wife and our affairs.

"From said proceeds I also give and bequeath unto the Deaconess Hospital, of Dayton, Ohio, the sum of One Thousand (1000) dollars, and from said proceeds I give and bequeath to my friend, W. C. Kennedy, the sum of Two Thousand (2000) dollars, in recognition of friendship that has existed between us for a good many years.

"From said proceeds I also give and bequeath to Jacob Antrim Crellin, Son of L. B. Crellin, the sum of Two Thousand (2000) dollars.

"I also give and bequeath from said proceeds to The Board of Education of Germantown, Ohio, the sum of Five Thousand (5000) dollars, to be used by said Board in erecting a Library Building, said building to be called The J. S. Antrim Library Building.

"I also direct that out of said proceeds my Executor, at the death of my wife, Carrie Y. Antrim, proceed to beautify my Cemetery lot in Germantown by the erection of some statutary,—bronze preferred—at a cost of Three Thousand (3000) dollars.

"It is my Will, and I further direct that in case there should not be sufficient funds to pay the foregoing bequests contained in this Item, in full, then that the said several bequests be reduced in proportion to the amount of such deficiency.

"All the rest and residue of said proceeds, if there be any, shall be divided equally between the children of my brothers, J. J. Antrim, Cyrus Antrim and F. T. Antrim, or their legal representatives."

Cyrus Antrim died September 29, 1901, and Katura Eckert died March 14, 1922. Charles Yhous, also known as Chas. Youse, and W. C. Kennedy, legatees mentioned in Item 7 of

the will, pre-deceased Carrie Y. Antrim, the life tenant. They died on September 26, 1944 and in June of 1915 respectively.

While there are collateral questions which will be answered in the opinion, an answer to three main questions propounded by the plaintiff will adequately declare legal rights raised by the pleadings and the evidence. They are:

First: What is the time of vesting of the gifts made under Item 7 of the will of Jacob S. Antrim, deceased, particularly as it refers to Charles Yhous, W. C. Kennedy, and "the children of my brothers, J. J. Antrim, Cyrus Antrim and F. T. Antrim, or their legal representatives"?

Second: Does the proposed use of the five thousand dollar ($5,000.00) legacy to the Board of Education of Germantown, Ohio to erect a library building comply with the provisions of the will of the testator?

Third: What is the effect of the testator's direction to the executor to spend three thousand dollars ($3,000.00) to beautify testator's cemetery lot in Germantown, Ohio by the erection of "some statuary,—bronze preferred—"?

The questions will be discussed and answered in order. Pertinent facts will be set forth and discussed under the appropriate question.

In considering the first proposition, the Court has read the elaborate and helpful briefs submitted by counsel and has given consideration to all the contentions made and has examined the authorities cited in the briefs. In determining the time at which the gifts vested, the Court is required to ascertain the intention of the testator. The cardinal rule in all will construction suits is to ascertain the intention of the testator and give effect thereto. The authorities cited in support of this proposition of law are so numerous that the Court finds no necessity to cite any cases in support thereof. Another principle of law which the Court is required to keep in mind is that rule of construction that the law favors the vesting of an estate on a date as early as possible; and, likewise, this rule is so well settled that the Court deems it unnecessary to cite cases in support of it. The latter rule, however, must yield to the cardinal rule which is that the intention of the testator as gathered from the whole will controls. What is this intention in construing the will from its four corners? In answering the question the Court will place itself in the shoes of the testator at the time of the execution of his will giving effect to his intention as of the date of his death.

It is very apparent that the purpose uppermost in the mind of the testator was to provide an income for life to the

first object of his bounty, his wife. Every other consideration
was secondary. At the death of his wife the next object was
to reduce all property to cash and to distribute the proceeds
to those persons selected by the testator and finally, if any-
thing be left, the rest and residue was given to the children
of his brothers "or their legal representatives." He only
provided an income for his wife for life thus protecting the
principal. His obvious intention was to postpone the payment
of the principal until his wife's death. There was nothing to
interfere with the enjoyment of the gift except the rights
to be enjoyed by Carrie Y. Antrim during her lifetime. The
Court is struck by the forcefulness of the rules laid down in
the case of **Ohio National Bank of Columbus v. Boone, 139
Oh St 361; 22 O. O. 414.** It seems to be the leading case on
the subject of vested estates. The syllabi of the Boone case
are:

1. "Ordinarily, a will speaks as of the death of the testator.
2. "The law favors the vesting of estates at the earliest
possible moment, and a remainder after a life estate vests in
the remainderman at the death of the testator, in the absence
of a clearly expressed intention to postpone the vesting to
some future time.
3. "To the frequently stated general rule that if there is
no gift in a will but by a direction to pay at a future time or
event, the legacy will not vest in the beneficiary until the
time for payment arrives, is the well recognized exception that
where the postponement of payment is for the convenience
of the estate, as the appropriation of the subject-matter of
the legacy to the use and benefit of another for life, the
ultimate interest will vest at the death of the testator. Under
such exception, the postponement of payment relates merely
to the enjoyment of the legacy and is not attached to the
substance thereof.
4. "Where a testator wills a part of his estate to another,
directing that (362) she shall receive therefrom a stipulated sum
annually for and during her natural life and further provides
that after her death the unconsumed portion shall be paid
to "my heirs, share and share alike," the remainder in such
portion of the estate as may be unconsumed by the life
beneficiary vests at the testator's death in such person or
persons as then answer the description of testator's heirs
under the statute of descent and distribution in force at such
time, unless a contrary design on the part of the testator
is plainly apparent."

Counsel for residuary legatees in a very excellent brief argues that the Boone case and the case at bar can be distinguished in that the testator in the Boone case disposed of his entire estate at one time by giving a life estate with a remainder over by the use of this language: gift to foster daughter, Helen M. Quinn, of one-third of estate during her life, "after the death of Helen M. Quinn, I direct my executor and trustee to pay unconsumed portion of this one-third of my estate, if any, to my heirs share and share alike." Counsel argues that in the instant case the gift is made at the time the proceeds are to be divided which is not true in the Boone case.

This Court cannot see the distinction. In the Boone case the executor and trustee was to pay after the death of Helen M. Quinn any unconsumed portion to testator's heirs. In the case at bar the executors were to pay Antrim's widow the income for life (the widow was not given any right to consume the principal) and at her death payment was to be made to Yhous and Kennedy and others and the residue to the children of named brothers. The cases are quite similar; there was a postponement of enjoyment, a time when the estate was to be distributed, a plan to accomplish the closing of the estate was created which establishes in this Court's mind that the testator intended to postpone the payment for the convenience of the estate and provided a method for distribution at the death of his wife, and such postponement does not attach to the substance of the gift but relates merely to the enjoyment of the legacy. Since the law favors the early vesting of estates, which principle was followed in the Boone case, the will must show a very clear intention that the vesting is to be withheld until some future time. Such a clear intention cannot be found in the will of Jacob S. Antrim. On the contrary, Item 7 of his will establishes a plan whereby his estate may be closed and the corpus distributed, no conditions attaching, after the death of his wife. There is no uncertainty of the right of actual enjoyment on the part of any of the legatees.

A later case which concerns itself with the question of the vesting of a legacy is discussed in the case of **Everhard, et al v. Brown, 31 O. O. 268; 62 N. E. 2nd 901.** This case answers an argument which might be raised affecting the testator's intention in the instant case to that portion of Item 7 of Jacob S. Antrim's will which provides:

"All the rest and residue of said proceeds, if there be any, shall be divided equally between the children of my brothers,

J. J. Antrim, Cyrus Antrim and F. T. Antrim, or their legal representatives."

It might be contended that the testator at the time he drew his will did not know who all the children of his brothers would be, and for this reason his intention was that the vesting would take place at a future time.

Syllabus One says:

"A bequest of a life estate, with remainder over to a class of persons not named but described, is not in and of itself to be regarded as manifesting the intention of the testator that such persons only should take in remainder as could answer the description at the termination of the life estate."

But Syllabus Three of the Everhard case provides:

"Where there is a devise to a class of persons, to take effect in enjoyment at a future period, the estate vests at the testator's death, subject to open and let in others as they are afterwards born or otherwise come into being before the time of possession; and, if opened to let in others, the previous beneficiaries will be divested of a proportionate interest."

Furthermore it was held in Syllabus Two:

"In the absence of clear testamentary intent, it will be deemed to have been the will of the testator that the remainders created by such a bequest should vest in interest and title at once upon his death in the persons then comprising the class described, and that the right of possession should be postponed until the life estate has become extinguished."

The Everhard case cites Ohio National Bank v. Boone, supra, and in construing Item 4 of Nathan S. Everhard's will the Court found that the testator had placed no contingency upon bequests made to W. P. Ellenberger and Lydia Isenberger who died before the life tenant and that the testator had therefore vested these bequests at the time of his death as he had vested the class bequests. The will provided:

"At the decease of my said wife and within six months thereafter to pay to the several institutions and persons herein named the following sums, viz: * * * pay to W. P. Ellenberger now of Washington D. C. five thousand dollars * * * pay to Lydia Isenberger, Doylestown, Ohio two hundred dollars."

See pages 275 and 276 of Everhard case supra. It is interesting to note that Judge Stevens wrote a dissenting opinion as to the class bequests, but on page 277 he said:

"So far as the specific bequests to W. P. Ellenberger and Lydia Isenberger are concerned, it is apparent that the testator intended them to vest at his death."

One of the cases upon which counsel for the residuary legatees relies is **Barr v. Denney, 79 Oh St 358.** It seems to this Court that the discussion of this case in Ohio National Bank v. Boone can very well be adopted by this Court and is not decisive of the question here presented. Text authorities and other cases which have been examined and have been helpful in writing this decision are as follows: **Rogers v. Schuller, 27 Abs 449; Simpson v. Welsh, 44 Oh Ap 115; Junk v. Jones, 44 N. E. 2nd 796, Syllabus 1; Imhoff v. Imhoff, 12 O. O. 285; 41 O. Jur. 783, Sec. 655; 16 O. Jur. 476, Sec. 97; 16 O. Jur. 483, Sec. 103; 16 O. Jur. 487, Sec. 106; Blair v. Brown, 25 O. O. 368; In Re Hutchinson, 120 Oh St 542; Tax Commission v. Oswald, Ex., 109 Oh St 36; Linton v. Laycock, 33 Oh St 128;** III Restatement of Property 312, Sec. 260.

While Judge Wm. C. Wiseman cited Ohio National Bank v. Boone in Winters National Bank and Trust Company v. Cullen, et al., Case No. 94310, Probate Court of Montgomery County, Ohio (an unreported opinion), in which it was held that the estate vested at the time of the death of one of the beneficiaries, he did not distinguish the Boone case but found that in the Cullen case there was a clear intention to postpone the vesting until some future time. There the Court in a determination of heirship suit and in a construction of the will of the decedent was dealing with cross remainders. Judge Wiseman was affirmed by the Court of Appeals of the Second District. Opinion to be found in 58 N. E. 2nd 702.

The second matter about which the plaintiff seeks the direction of the Court concerns a charitable trust. The evidence which is before the Court by way of stipulation discloses that at the time of the death of Jacob S. Antrim, a public library was in existence. This library was housed in a frame residence building owned by the Board of Education and situated on land which was a gift of the testator in 1896. He and others donated money for the erection of a frame library building. Subsequently Mr. Antrim made his will which provided for a five thousand dollar ($5,000.00) gift to the Board of Education of Germantown, Ohio "to be used by said Board in erecting a library building, said building to

be called the J. S. Antrim Library Building." Mr. Antrim died in 1901. The Board of Education felt that by reason of the age of Mrs. Antrim, who was given a life estate in Mr. Antrim's will, it might be many years before the bequest to them would be realized; so, in 1903 the Board began negotiations with the Andrew Carnegie Foundation for the erection of a new library. This was accomplished, and the Board of Education received ten thousand dollars ($10,000.00) which was used in erecting the present library on the land given by Mr. Antrim. The library was dedicated July 3, 1927. The library is now in use and is operated and controlled by the Germantown Board of Education. The defendant, The Germantown Board of Education, now believes that another library in Germantown would not be feasible. They have proposed that the legacy be used for construction and expansion of a children's library in the basement of the now existing library to be known as "The J. S. Antrim Children's Library." It is also proposed that a separate outside entrance be provided to the basement and that a plaque be placed at the entrance upon which would be inscribed the words, "The J. S. Antrim Children's Library." The evidence further discloses that J. S. Antrim had a continuing interest in the library affairs of the community for a number of years prior to his death. The Court will take judicial notice of the relative size of Germantown as a community and of the last census report which discloses that Germantown has a population of two thousand ninety-five (2,095) persons.

There seems to be no question as to whether the testator's gift created a charitable trust. This will not be discussed. Suffice to say that the Court finds that a charitable trust was created. See II Restatement of the Law, Trusts, Sec. 348; II Perry on Trusts (7 Ed.) Sec. 687; 7 O. Jur. 119, Sec. 4; page 141, Sec. 17; and pages 146 and 147, Sec. 19.

In order to determine whether the plan proposed by the defendant, The Germantown Board of Education, can be accepted by the Court as being within the spirit and intent of the testator's will, it is necessary to determine whether the equitable doctrine of cy pres can be applied. It is urged by the defendants, the Germantown Board of Education, that it does apply and by the residuary legatees that it does not.

While authorities have been examined in the United States and England, it should be said at the outset that the doctrine of judicial cy pres has been applied by the Courts of Ohio. See 7 O. Jur., Sec. 39; Gearhart v. Richardson, 109 Oh St 418 (doctrine followed without label); McIntire v. Zanesville, 17 Oh St 352 (doctrine followed without label); Landis v.

Wooden, 1 Oh St 160; Trustees of McIntire Poor School v. Zanesville Canal and Mfg. Co. (rule followed by the Court but not labeled). For other cases in which the rule was followed or not followed as the case may be, see Ohio Annotations to Restatement of the Law on TRUSTS, Sec. 399.

An examination of the authorities discloses that there are two prerequisites to the application of the equitable doctrine of cy pres; namely, a failure of a specific gift made by the settlor and a general charitable intent disclosed in the instrument creating the trust. In such cases the trust will not fail, but the Court will direct the application of the gift to some charitable purpose which falls within the general charitable intention of the settlor. For a complete discussion of the doctrine see 7 **O. Jur. 175** and **176, Sec. 38;** Restatement of the Law on TRUSTS, page 1208, Sec. 399.

In 10 Am. Jur. 676, Sec. 124, it is said:

"The cy-pres doctrine can properly be applied only where it is or has become impossible beneficially to apply the property left by the founder or donor in the exact way in which he has dictated it to be applied, and it can only be applied beneficially to similar purposes by different means. There can be no question of cy pres until it is clearly established that the directions of the testator cannot be carried into effect. Therefore, a Court of equity is not entitled to substitute a different scheme for the scheme which the donor has prescribed in the instrument which creates the charity, merely because a coldly wise intelligence, impervious to the special predilections which inspired his liberality, and untrammeled by his directions, would have dictated a different use of his money."

In **Allen, Admr., v. City of Bellefontaine, et al., 47 Oh Ap 359, Syllabus 1,** it is said:

" 'Cy pres doctrine' means that, where literal execution of the trusts of a charitable gift is inexpedient or impracticable, equity will execute them as nearly as it can, according to original plan, but doctrine applies only where testator has manifested general intention to give to charity."

In **Heinlein v. Elyria Savings and Trust Company, 75 Oh Ap 353, Syllabus 4,** it is said:

"If property is given in trust, to be applied to a particular charitable purpose, and it is or becomes impossible, impractic-

able or illegal to carry out the particular purpose, and if the settlor manifested a general intention to devote the property to charitable purposes, the trust will not fail, but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor. (II Restatement of the Law of Trusts, Section 399.)"

It appears to the Court from the evidence that it would be impracticable in a village the size of Germantown to permit the expenditure of five thousand dollars ($5,000.00) for a new library building when there is already in existence a public library erected by a gift from the Andrew Carnegie Foundation. From the testimony it obviously appears that it was the testator's intention that the library building provided for in his will be erected on the land which he had given during his lifetime. This has already been accomplished by another gift. Furthermore, if a library were still needed, the erection of any library building for five thousand dollars ($5,000.00), which may have been adequate for a period of time subsequent to testator's death, most certainly would be inadequate now in view of present day building costs. Therefore, the Court finds that it would be impracticable and inexpedient to build a library building as contemplated by J. S. Antrim's will. Furthermore, the act of the Germantown Board of Education in proposing a new plan for the use of the legacy in effect renounces the gift for the purpose of building a new library building.

But, in order to apply the cy pres doctrine, the Court must also inquire whether the testator had a general charitable intention. See Heinlein v. Elyria Savings and Trust Company, supra, Syllabi 4 and 5; Allen, admr., v. City of Bellefontaine, et al., supra, Syllabus 1; and text authorities hereinafter cited. Also see 74 A. L. R. 671 for a general statement of the rule and cases cited. A discussion of the problem in III Scott on Trusts, 2104, Sec. 399.2 is enlightening.

"Where property is given in trust for a particular charitable purpose, and it is impossible or impracticable to carry out that purpose, **the trust does not fail if the testator has a more general intention to devote the property to charitable purposes** * * * This principle is easy to state but it is not always easy to apply. It is seldom that the testator's intention can be definitely analysed and divided into a particular and a general intention. **It is ordinarily important to determine what disposition the testator intended should be made of the property if his particular purpose could not be carried out.**

Indeed, it is ordinarily true that the testator does not contemplate the possible failure of his particular purpose, and all the Court can do is to make a guess not as to what he intended but as to what he would have intended if he had thought about the matter. Not unnaturally, some Courts go much further than others in applying the doctrine of cy pres." (Emphasis ours.)

And in III Scotts, 2098, Sec. 399 it is said:

"The theory is that although the testator intended that the property should be applied to the particular charitable purpose named by him, yet he had a more general intention to devote the property to charitable purposes.

"It is not true, however, that a charitable trust never fails where it is impossible to carry out the particular purpose of the testator. In some cases, * * * it appears that the accomplishment of the particular purpose and only that purpose was desired by the testator and that he had no more general charitable intent and that he would presumably have preferred to have the whole trust fail if the particular purpose becomes impossible of accomplishment. In such a case the cy pres doctrine is not applicable."

In the same work at page 2110, Sec. 399.3 it is said:

"* * * where at the time of the creation of the trust it is possible and practicable to carry out the specific directions of the testator, but in course of time conditions change so that it becomes impossible or impracticable to carry out these directions, the cy pres doctrine is almost invariably applied, and it is rare indeed that the trust is held to fail altogether. If the trust fails, a resulting trust arises in favor of the persons who have succeeded to the estate of the testator; * * *".

Also see Restatement of the Law of Trusts, Sec. 399, paragraphs f, g, and h, pages 1213, 1214, and 1215.

"Where it clearly appears that the testator intended that the property should be applied only to the particular purpose which failed, * * * it has been held that the doctrine of cy pres is not applicable * * *."

See III Scott on Trusts, 2112, Sec. 399.3.
In 10 Am. Jur., 678, Sec. 127, it is said:

"Where the method of execution of a trust defined by the terms of the instrument creating it is impracticable or illegal, the trust will not be permitted to fail if the overriding purpose of the donor, that the property is to be devoted to charitable purposes regardless of the peculiar method of execution, is manifest from the instrument.

"If, however, the charitable purpose is limited to a particular object or to a particular institution, and there is no general charitable intent, then, if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect, and possibly in some cases after it has taken effect, the doctrine of cy pres does not apply; in cases arising under a will, in the absence of any limitation over, or other provision, the legacy lapses." (Numerous cases cited.)

In determining whether testator had a general charitable intent the Court must be guided by the usual rules in will construction cases. What was the intention of the testator?

In Allen, Admr. v. City of Bellefontaine, supra, it is said in Syllabi 2 and 3:

"Testatrix's intention governs construction of will." and
"In determining testatrix's intention, conditions surrounding testatrix at time of execution of will, as well as phrasing of will itself, may be considered."

In **Ward v. Worthington, 28 Oh Ap 326, Syllabus 3,** it is said:

"In construction of will, intention of testator, as gathered from whole will, must control, when such intention is not in conflict with law or against public policy."

Also see **Carter v. Reddish, 32 Oh St 1.**
In **Findley et al, Trustees, v. Conneaut, 145 Oh St 480, Syllabus 3,** it is said:

"In an action to construe a will, the sole function of the Court is to ascertain and give effect to the intention of the testator: Such intention must be ascertained from the words used in the will by giving to such words their usual and ordinary meaning."

Also see **Townsend's Exrs. v. Townsend, 25 Oh St 477.**

"In order judicially to determine whether a charitable trust, which for some reason cannot be carried out in accordance

with the prescribed plan of testator, should be executed 'cy pres', it must be decided whether testator's general intention was that his property should be applied to charity in any event, or only if such application can be made in the particular manner or form specified in his will."

See In Re Wilkey's Estate, 10 A 2nd 425, 427, 428; 337 Pa. 129.

It is difficult for the Court to arrive at any other conclusion than that the will of J. S. Antrim does not express a general charitable intent although many cases and text authorities were carefully read with a view to applying the cy pres doctrine in this case on the theory that it was the Court's duty to apply a liberal construction to the will in order that the trust should not fail. The Court is also cognizant of the fact that an equitable principle must be applied in arriving at a conclusion.

While the fact that the testator's desire to have his name on the building does not distract from the charitable character of the gift (See **Becker's Executor v. Fisher, 112 Oh St 284 at page 296, 147 N. E.** 744; also **Heinlein v. Elyria Savings and Trust Co., 75 Oh Ap 353; 31 O. O. 123, Syllabus 2**), it does have some effect in determining whether testator had a general charitable or benevolent intent. See **Allen's Admr. v. City of Bellefontaine, 47 Oh Ap 359** and **Ward v. Worthington, 28 Oh Ap 326, Syllabus 4.**

The donor had one purpose in mind and that was the erection of a library building to bear his name. One was already in existence at the time he wrote his will, so that the Court can only infer that a more modern and adequate library building was needed. The testator must have been aware of this. Of course, he could not forsee that his wife would live forty-four years and that another library would be built. When the testator provided a gift to the Board of Education of Germantown, Ohio "to be used by said Board in erecting a library **building** said **building** to be called the J. S. Antrim Library **Building**" (Emphasis ours), he restricted the use for a particular specified purpose. If the cy pres doctrine could be applied in this case, the Court would approve the plan proposed by the Germantown Board of Education as the Court is sympathetic with it; but the Court cannot find in Antrim's will something that is not there—a general charitable intent. And for this reason the Court cannot apply the equitable doctrine of cy pres. While the testator no doubt had in mind the education of the public as a secondary purpose, his primary purpose was the creation of a library building to bear his name. If what he had said in his will

had been the reverse of what has just been said; or, in other words, if his primary object had been the extension of education and the dissemination of knowledge and his secondary object the creation of a building to bear his name, then the cy pres doctrine would be applicable. For a full discussion of the distinctions between a general charitable intent or a narrow or particular intent, see 2 Bogert on Trusts, pages 1307, 1308, and 1309, Sec. 436.

Counsel for the Germantown Board of Education relies on In Re: Mead's Estate, 277 N. W. 694. This case has been examined very carefully. Mead provided in Item 5 of his will:

"Because the citizens of the city of Sheboygan have reposed in me such unbounded faith and confidence, I desire to reciprocate in some measure, and take pleasure in, and do hereby bequeath the sum of Twenty Thousand ($20,000) Dollars, either in cash or in * * * to be held in Trust * * * and employed as follows, to wit: To found a library in the city of Sheboygan for free public use * * * to be known and called 'The Mead Library' and said bequest to be paid over and employed upon the following conditions respectively to wit:"

Then follow two plans depending on whether the city erected a City Hall or a separate library building containing rooms for a suitable library. If the city failed to do so, then the alternative plan provided that certain named trustees should spend the bequest in erecting a building and providing a suitable lot and furnish such building and library therein. There was an intervening Carnegie gift. The Court applied the cy pres doctrine but said on page 703 "There is no need to apply that doctrine farther than to construe the provisions of the will liberally in support of the trust estate by the will and to extend the provisions of paragraph 2" (referring to the alternative plan) "for purchase of books" to other library purposes.

Suffice to say that the Court agrees with the holding in the Mead case but is unable to use the case in support of defendant's contention. The will in the Mead case quite definitely discloses a general charitable intent on the part of the testator.

Other cases were examined in order to obtain a better understanding of what is meant by general charitable intent. Cases in which a general charitable intent was found to exist are as follows: Jackson v. Phillips, 14 Allen 539; Richardson v.

Mullery, 200 Mass. 247, 86 N. E. 319, 74 A. L. R. 674; Rhode Island Hospital Trust Company Trustees v. Williams, 50 R. I. 385, 148 A. T. L. 189, 74 A. L. R. 664; Norr v. Loomis, 259 Mass. 344, 102 N. E. 419; Town of Milton v. Attorney General, 314 Mass. 234, 49 N. E. 2nd 909.

Cases holding the cy pres doctrine inapplicable on the ground that there was no general charitable intent are as follows: Brooks v. Belfast (1897) 90 Me. 318, 38 A. T. L. 222; Teele v. Bishop of Derry, 168 Mass. 341, 38 L. R. A. 629, 60 Am. St. Rep. 401, 47 N. E. 422; Gladding v. St. Matthew's Church (1904) 25 R. I. 628, 65 L. R. A. 225. In Bowden v. Brown, 200 Mass. 269, 86 N. E. 351:

"The testatrix provided that the remainder of her estate be given to a town 'toward the erection of a building that should be for the sick and poor.' The town refused to accept the legacy or to erect the building. A question arose whether the charity could be administered under the cy pres doctrine. The court held that the will manifested no general charitable intent and said: 'It being impossible to do that which the testatrix had in mind, can we discover a purpose to do something else of a similar character? We think not. There is nothing to indicate that she intended to make provision generally for the sick and poor of the town, or particularly for those without homes, unless they could be provided with a home in a building to be erected for their use. General provision for the sick and poor would seem to include a charity much broader than anything in her contemplation. The case seems to fall within the class where no intent to use the gift for other charitable purposes can be discovered, as it is impossible to execute the particular charity for which provision is made. In such cases the charity fails altogether.'"

The third question concerns itself with a direction to the executor to beautify testator's cemetery lot in Germantown "by the erection of some statuary,—bronze preferred— at a cost of three thousand (3000) dollars." The Court must first ascertain what the testator meant by this language. The testator was very definite in his direction that the executor was to beautify his cemetery lot. The only difficulty lies in attempting to determine the method by which his cemetery lot should be beautified. The Court has been unable to determine just what the testator meant by the word "statuary." At the time Mr. Antrim drew his will, he may have had some very definite ideas about statuary, and he may have imparted to his executor some thoughts concerning his wishes, or there

may have been a custom during the latter part of the 19th century regarding certain kinds of statuary that would beautify a cemetery lot. Little or no extrinsic evidence was presented on the third question other than the fact that testator's cemetery lot is in good condition, that there is a large expensive monument and three markers on it, and that Mrs. Antrim is not buried on the lot. Some opinion was expressed during the trial of the case and in briefs of counsel that the erection of statuary would detract from the beauty of testator's lot and would be a gaudy display which would detract from the beauty of the entire cemetery. Being unable to determine testator's intention other than the fact that his lot should be beautified and having in mind the rights of other owners of cemetery lots, it appears to the Court that a finding on the part of this Court as to the kind of statuary which the Trustee should erect would be against the interests of all persons who use the Germantown cemetery. For that reason the direction to expend the sum of three thousand dollars ($3,000.00) to erect "some statuary,—bronze preferred" is against public policy and void.

The Court does not have to rely solely upon public policy as a reason for rejecting testator's direction as to the method to be employed in beautifying his cemetery lot, but the Court is of the opinion that there is other ample authority to reject that part of testator's will on the ground of uncertainty. In Sullivan, Executor v. Corrigan, et al., 6 O. N. P. N. S. 606, Syllabus 2, it is said:

"A residuary clause which provides that 'whatever is left at last, if anything, you may give to the poor of the parish,' is void for uncertainty, and the residue of the estate must be distributed according to law."

and in **Dirlam, Exr., et al., v. Morrow, et al., 102 Oh St 279, 280,** and **281,** the Supreme Court of Ohio with one judge dissenting, held in construing the will of Susan N. Sturges, that certain items of her will were too vague and therefore void for uncertainty. And in **Cope v. Cope, 45 Oh St 464,** it is said.

"Where the provisions of a will in each and all of its items are, when considered as an entirety, so obscure that, with the aid of all the light that can be shed on it by the extraneous circumstances, no definite idea can be formed of the intention of the testator in any of the dispositions he has attempted to make, it should be held void for uncertainty, and the property left to descend and be distributed according to law."

While the decision in the Cope case is to the effect that the will cannot take effect as such by reason of its being indefinite and uncertain, certainly the rules as set forth in the aforesaid cases would apply to a part of a will just as much as it would apply to the entire instrument. Also see **41 O. Jur, Sec. 462.**

The Court is aware of the rule in construing wills that words in general are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be collected and ascertained from the instrument and that such words are in all cases to receive a construction which will give to every expression in the will some effect, rather than one that will render any of the expressions inoperative. See **Carter v. Reddish, 32 Oh St 1; Anderson v. Gibson, 116 Oh St 684;** and Page on Wills (Lifetime Ed.) Sec. 933. Also see Findlay, et al, Trustees, v. Conneaut, Supra, Syllabus 3.

Statuary is defined in Webster's Unabridged Dictionary, Second Edition, as follows:

"2. The branch of sculpture treating of figures in the round.
"3. A collection of statues; statues collectively."

Statue is defined as follows:

"1. The likeness of a living being sculptured or modeled in some solid substance, as marble, bronze, or wax; an image."

Did he intend a collection of statues? If so, what would be the subject of the statuary? Did he intend a statue of himself? And where would the trustee find a picture of the decedent from which a statue could be made? As mentioned before, the executors originally named in the will may have been informed by the decedent what was meant by the direction which was made. No one sought to introduce any extrinsic evidence of a knowledge on the part of anyone as to what was meant by the testator, and the executors named in the will are now deceased. This provision of the will being ambiguous, parol testimony would have been admissible. It therefore appears that it is impossible for the Court to determine what the testator's intention was as to the erection of some statuary.

But the Court can determine and does determine that the decedent meant that his cemetery lot should be beautified. This being the primary purpose of decedent's direction, it shall not be allowed to fail. The provision for the erection

of statuary is not a limitation upon the general direction to the executors to beautify the cemetery lot. For this reason the Court orders the trustee to expend a sum of money not to exceed five hundred dollars ($500.00) in beautifying testator's cemetery lot in a manner substantially as follows: to have the lot landscaped by planting shrubbery, evergreens, appropriate trees, or perennial flowers all in accordance with a plan to be submitted by one or more recognized landscape architects or gardeners, to have the markers and monument cleaned, and to do any other act of beautification which may add tone and color to the lot but which shall not in any way detract from the beauty of the cemetery as a whole.

The decision to reduce the amount to be expended from three thousand dollars ($3,000.00) to an amount not to exceed five hundred dollars ($500.00) is not without precedent. In Heinlein v. Elyria Savings and Trust Company, Supra, Syllabus 8 it is said:

"An excessive gift for the upkeep and maintenance of a cemetery lot may be reduced by the court on the ground of public policy, when the excess is given to a public charity."

While in the Heinlein case the Court was dealing with a cemetery trust, it would seem to this Court that the principle there announced would be applicable to this case even though a trust is not involved. An expenditure of three thousand dollars ($3,000.00) to beautify the cemetery lot would be excessive, particularly since the Court is unable to determine the intention of the decedent in his direction that some statuary be erected.

As to the first question propounded by the plaintiff, the Court is of the opinion that the legacy to Charles Yhous, correctly known as Youse, and to W. C. Kennedy vested at the time of the death of the testator. Since they are both deceased, their respective legacies are to be paid to their personal representatives. The Court is also of the opinion that the rest and residue of the proceeds given to the children of the brothers of the testator vested at the time of the death of said testator.

As to the second question the Court is of the opinion that the charitable trust created by testator fails and the gift to the Board of Education of Germantown, Ohio, lapses. The plan for a children's library proposed by the Board of Education must be rejected because the will does not reflect a general charitable intent on the part of the testator, and for this reason the equitable doctrine of cy pres cannot be applied. The sum of five thousand dollars ($5,000.00) will pass to the

residuary legatees and shall be divided equally among the children of testator's brothers or their legal representatives as provided in testator's will.

In regard to plaintiff's inquiry as to the third question the Court is of the opinion that testator's cemetery lot should be beautified but that the manner of accomplishing his intention as provided in his will is void as against public policy and void for uncertainty. For these reasons an expenditure of three thousand dollars ($3,000.00) is excessive, but the trustee is to beautify testator's cemetery lot by expending an amount not to exceed five hundred dollars ($500.00) in the manner set forth in the opinion. The excess or the sum of twenty-five hundred dollars ($2500.00) will pass to the residuary legatees and shall be divided equally among the children of testator's brothers or their legal representatives as provided in testator's will.

Counsel may draw the proper entry.

Costs to be taxed against the plaintiff as trustee.