**ALLEN, Admr, Etc v
BELLEFONTAINE (city) et**

Ohio Appeals, 3rd Dist, Logan Co

No 828.   Decided Feb 27, 1934

Miller & Dickinson, Hover & Smith, for plaintiff and defendant trustee.

J. K. Rockey, Lima, and Hale & McGee, Bellefontaine, for defendant Nettie A. McClain.

## OPINION

By GUERNSEY, J.

While there was some evidence offered on behalf of the defendant Nettie A. McClain, tending to prove that the execution of the trust created under the will, is expedient and practicable, the overwhelming evidence is to the effect that the literal execution of the trust as created in the will, is inexpedient, impracticable and impossible.

The rule relating to the cy pres doctrine is as follows:

"Where the literal execution of the trusts of a charitable gift is inexpedient or impracticable a court of equity will execute them, as nearly as it can, according to the original plan. The general principle upon which the court acts is that, if the testator has manifested a general intention to give to charity, the failure of the particular mode in which the charity is to be executed shall not destroy the charity; but, if the substantial intention is charity, the law will substitute another mode of devoting the property to charitable purposes, though the formal intention as to the mode cannot be accomplished."

**7 Ohio Jurisprudence, 175 and 176.**

It will be noted that under the rule above quoted, the doctrine is applied only in cases where the testator has manifested a general intention to give to charity.

This limitation on the application of the doctrine of cy pres is set forth in Pomeroy's Equity Jurisprudence, Fourth Edition, Volume 31, page 2208, in the following words:

"A limitation upon the generality of the doctrine seems to be settled by the recent decisions, that where the donor has not expressed his charitable intention generally, but only by providing for one specific particular object, and this object cannot be carried out, or the charity provided for ceases to exist before the gift takes effect, then the court will not execute the trust; it wholly fails."

This limitation was applied in the case of Teale v Bishop of Derry et, decided by the Supreme Court of Massachusetts, May 28, 1897, and reported in Volume 47 Northeastern Reporter at page 422. The third sub-division of the syllabus in this case is as follows:

"Testatrix bequeathed a sum to trustee to be executed in purchasing a lot and building a chapel in her native place, C., the title to be vested in the bishop, in trust to be forever used for public worship under the auspices of the Roman Catholic Church. It was found to be impracticable to carry out the scheme, for the reason that the bishop refused to assist in maintaining a chapel or support a priest, and without his help the people could do neither. HELD, that the testatrix's purpose was limited to the purchase of a lot and building of a chapel at C. for the benefit of the inhabitants, and that a general intent to advance religion in the parish could not be inferred, and hence the doctrine of cy pres could not be invoked, and that the bequest failed."

It is also applied by the Supreme Court of Maine in the case of Allen et v Trustees' of Nasson Institute, decided September 27, 1910, and reported in 77 Atlantic, page 638, in which it was held that a testamentary gift to provide funds to establish and maintain an institution for the education of young women, to promote their moral, intellectual and physical education, provides for a school of an entirely different type than a high school for the education of young women only, and does not authorize the use of the funds in whole or in part in assisting in maintaining a town high school or other school for both sexes, though the funds be insufficient to effect the donor's purpose.

It was also applied by the Supreme Court of Massachusetts in the case of Boyden et v Brown et, decided November 24, 1908, and reported in 86 Northeastern at page 351.

In that case the testatrix bequeathed eight thousand dollars to a town "toward the erection of a building for the sick and poor, those without homes," but the town refused to accept the legacy so given for the specific charity stated in the will, and it was held the court could not apply it to some other similar charity under the doctrine of cy pres.

It was also applied by the Court of Chancery of New Jersey in the case of Brown et v Condit et, decided September 30, 1905, 61 Atlantic, 1055.

In this case, testatrix having no knowledge of the work conducted for the benefit of sick seamen in the Brooklyn Navy Yard, but having previously given small sums to W., a missionary working there, bequeathed the surplus of her estate, if any, to "the hospital fund for sick seamen at Navy Yard, Brooklyn, N. Y., care of W., chaplin." W. was not chaplin of the Navy Yard and died before testatrix, and there was no fund maintained for the benefit of such seamen. And it was held that a court of chancery, under the cy pres doctrine, could not decree such bequest to another institution conducting religious and charitable work among the sailors of larger scope than that conducted by W., but that the bequest lapsed and passed to the testatrix's next of kin.

In the opinion in this case, at page 1057, the court quotes with approval from the opinion in the case of Teele v Bishop of Derry, above mentioned, as follows:

"If the charitable purpose is limited to a particular object or to a particular institution, and there is no general charitable intent, then, if it becomes impossible to carry out the object or the institution ceases to exist before the gift has taken effect, and possibly in some cases after it has taken effect, the doctrine of cy pres does not apply, and in the absence of any limitation over or other provision the legacy lapses."

It is therefore necessary to inquire whether there was any general charitable intent on the part of Sarah Ellen Covington in connection with the trust created in her will. Her intention governs and in determining such intention, the conditions surrounding her at the time of the execution of the will as well as the phrasing of the will itself may be considered. Among such conditions was the existence in the city of Bellefontaine, of the Mary Rutan Hospital furnishing the services and equipped in the manner hereinbefore set forth.

The principal clauses of her will relating to the creation of the trust, are as follows:

1. "To the City of Bellefontaine, I give, in trust as a memorial to my late husband Dr. P. D. Covington, my home and grounds two lots except 40 feet off east end, all buildings thereon."

2. "The proper officials shall turn all this property over for the exclusive use of reputable physicians and surgeons of Bellefontaine and Logan Co. for all time."

3. "To be used as a place to hold their meetings carry on research work and as a private lying in hospital and for treatment of other special cases if so desired."

4. "Books now here which belonged to the late Dr. Covington shall be kept in the house, all of my oil paintings except two, and other pictures not otherwise disposed of."

5. "I give this much loved, hard earned home to be used for the purpose above named, With the **request** that it **shall always** be called **The Dr. Covington Golden Rule Clinic,** and that everything **be managed accordingly,** and that a fair per ct. of all fees received by physicians and surgeons &c for care treatments operations services of all kinds rendered here Be placed in a trust fund to be used by committees or trustees herein after named and their successors for upkeep Taxes insurance &c improvements &c of above described property."

6. "$2000 in bonds may be used at once to fit the home for the uses above named."

7. "Should additions be needed in the future I desire that they be placed on east or north side or both that the present front remain as it is."

8. "I trust the two committees named below and their successors will carry out my wishes fully, not forgetting whose name and memory it is to perpetuate To this end I ask that memorial services be held here Sept 15th every year, and that members of The Womans Literary Club be invited to share in these services."

As the Mary Rutan Hospital was in existence at the time of the execution of the will, it would appear that it was the intention of the testator not to adopt that hospital as the beneficiary of her bounty but to create an institution separate and distinct from and furnishing services of a different class and character from those furnished by such hospital.

The first quotation from the will above set forth, clearly shows the intention of the testator that the identical home and grounds described, adapted to the use thereafter mentioned, should constitute the memorial to her husband, and that there was no general intention that they should or could be used for any other purpose, and quotation 2 providing for the turning over of this property for the exclusive use of reputable physicians and surgeons of Bellefontaine and Logan County for all time, and quotation 3 relating to the use of the property and quotation 4 with reference to books, oil paintings and other pictures to be kept on the premises and quotation 5 with reference to the name by which it shall be called and the manner in which it shall be managed and the methods of its upkeep, and quotation 6 relating to the use of $2000 bonds to fit it for the uses named, and quotation 7 with reference to the location of additions to the property, and quotation 8 with reference to memorial

services to be held in the property, serve to make this intention free from any uncertainty or doubt.

Quotation 2 from the will providing for the exclusive use of the premises by the reputable physicians and surgeons (in contradistinction to any portion or class of the sick or ailing public who would be the beneficiaries of a general trust for public hospital purposes) constitutes such physicians and surgeons the beneficiaries of the trust; and this limitation as to the beneficiaries is further emphasized by provisions contained in Quotation 3 as to the uses of the premises, the specified uses being peculiar and by their nature limited to physicians and surgeons in contradistinction to any class of the general public, and the only use that might partake of a general public character, to-wit, a lying in hospital, being expressly made private; and is further emphasized by the name adopted in quotation 5 and the provisions as to a fair percentage of all fees received by physicians and surgeons for services rendered on the premises being placed in a trust fund to be used for upkeep, taxes, insurance and improvements, and so forth, of premises.

From the provisions of quotation 5 it is clear that the testator was aware that the trust funds provided in her will were insufficient to carry out the purposes designated in her will and that the trust was created with the expectation, if not upon the express condition, that additional funds would be provided by the physician and surgeon beneficiaries in the manner mentioned for carrying out such purposes at the place designated by her.

To sum up, the testator had no general charitable intention; her charitable intention was limited to constituting her identical home and grounds described in her will adapted to the uses specified in her will as a memorial to her husband; that the beneficiaries of the charitable trust created by her were the reputable physicians and surgeons of Bellefontaine and Logan County and not any other portion or class of the public, and that the uses provided for were for the benefit of such physicians and surgeons and not for the benefit of any other portion or class of the public, and that such trust was created with the expectation that the beneficiaries thereof would in the manner provided for in the will, provide necessary additional funds to make the carrying out of the same expedient and practicable; and that the mode provided for the execution of the trust was of the essence of the trust.

The proposed endowment of Mary Rutan Hospital does not come within the charitable intent of the testator, as the charitable intent of the testator is not general but is limited to the mode of execution prescribed in the will, and for the further reasons that the intended beneficiaries of the trust created by her will are a different class than the portion of the public who would be the beneficiaries of the proposed endowment of Mary Rutan Hospital, and the character and class of facilities and services provided for in said will differ from those proposed to be furnished under such endowment.

As the testator had no general charitable intent and the mode of carrying out the trust is of the essence of the trust, the doctrine of cy pres cannot be applied and the execution of the trust in the mode provided in the will being inexpedient, impracticable and impossible, the devises and bequests made for the purposes of the trust lapse and the property covered thereby passes by inheritance to the next of kin. This applies both to the real estate specifically devised for the purpose of the trust, as well as to bonds bequeathed for the remodeling and upkeep thereof and the income from bonds and real estate and the interest in real estate devised and bequeathed for the upkeep and maintenance of the property, as well as the personal property directed to be kept in said home.

As the trust has lapsed as to the real estate described by the testator in her will as "my home and grounds" and there is sufficient personal property, as shown by the evidence, to pay all the indebtedness of said estate, the heirs at law and next of kin of the testator are entitled to the immediate possession of said real estate, and as all necessary parties are before this court, and final determination of their respective rights can be made herein and a multiplicity of suits thereby avoided, leave will be granted to Nettie A. McClain, one of such heirs at law who filed her answer and cross-petition herein, to amend the same so that partition of said premises may be awarded thereon herein.

Under said will the defendant Ellen Louise Allen is entitled to an estate for life and to the possession during the existence of such life estate, of the business blocks described in the petition herein, with the rights and privileges ordinarily enjoyed by and subject to the obligations ordinarily imposed on a life tenant in real estate, that the clause in said will "Provided she needs it", relating to the income from said real estate during her lifetime, means, as used in the will, that she shall receive such income as long as she cares to receive it, or does not waive it; and the heirs at law and next of kin of the testator are entitled to the remainder of said real estate subject to said life estate.

Any funds in the hands of the administrator derived from rents of the property described as "my home and grounds" remaining after the payment of taxes, insurance and other necessary expenses of maintenance of said property, is the property of and shall be paid to said heirs at law and next of kin; and any funds in the hands of the administrator derived from rents of the business blocks remaining after the payment of taxes, insurance and other necessary expenses of maintenance of said property, is the property of and should be paid to the defendant Ellen Louise Allen.

If there is a lot remaining of the Florida real estate of which the testator died seized, the defendant Ellen Louise Allen is entitled to the half of the income of said lot, or, in case of sale thereof, is entitled to half the income from government bonds purchased with the proceeds thereof.

That the trust provided for in the will having lapsed, the $2000 in bonds directed to be used in fitting the home for the trust purposes, are assets in the hands of the administrator for distribution among the heirs at law and next of kin of the testator.

The bonds, or proceeds thereof, remaining in the hands of the administrator after the distribution of said $2000 in bonds shall after the payment of the balance owing of the costs and expenses of administration, and debts of the testator, be delivered or paid to a trustee to be appointed by the court, who shall hold the same together with the funds that may be derived from the Florida real estate which the trustee is hereby authorized to sell on terms approved by the court, and invested (if not already invested) in United States Government bonds, and such trustee shall pay one half of the income therefrom to said Ellen Louise Allen during her lifetime, and the other half to the heirs at law and next of kin of decedent; and at the death of said Ellen Louise Allen, said trustee shall pay all the funds remaining in his hands, to said heirs at law and next of kin.

KLINGER, J, concurs.

CROW, PJ, dissents.

### DISSENTING OPINION

By CROW, PJ.

I dissent from the judgment of the ma-

jority so far as pertains to the property other than the real estate left by the testator, mentioned in her will as "my home and grounds", because, in my opinion, the evidence proves that the spirit of the trust can be carried into practical execution in Mary Rutan Hospital as is proposed, which situation makes the cy pres doctrine applicable, and therefore prevents the trust from lapsing.

But as to the real estate referred to in the will as "my home and grounds", the cy pres doctrine should not apply, and as to it the trust lapses for the reason that testatrix intended it to be used solely as the place for the functioning of the charity, which intention cannot be effectuated. As to that feature of the judgment, but no further, I concur.