RICE, EXRX., ET AL., APPELLANTS, *v.* STANLEY, TRUSTEE, ET AL., APPELLEES.

[Cite as Rice v. Stanley (1975), 42 Ohio St. 2d 209.]

(No. 73-1011—Decided May 7, 1975.)

*Mr. F. Herbert Hoffman, Jr., Mr. Charles S. Lopeman, Messrs. Chester, Hoffman, Park, Willcox & Rose* and *Mr. John J. Chester*, for appellants.

*Messrs. Taft, Stettinius & Hollister, Mr. Leonard A. Weakley, Mr. Jerome Braun* and *Mr. Cedric A. Stanley, in propria persona*, for appellee Cedric A. Stanley.

*Mr. William J. Brown*, attorney general, *Mr. J. John Stevenson* and *Mr. Joseph M. Paul*, for appellee state of Ohio.

O'Neill, C. J.  Under Item VIII of his will, Howard Conover provided for the final disposition of the trust property.  He first provided that at the death of his wife, if there be in existence at that time a hospital, the trustee should pay to the company owning and operating the hospital, income and money from the principal for the purpose of enlarging the building or increasing the equipment of the hospital, or for the purpose of purchasing or acquiring additional land or buildings therefor.

It is undisputed that there was no such hospital in existence at the time of the death of his wife, Marie. The language of the above portion of his will is, therefore, not controlling in the issue presented to this court, as his will provided for the disposition of the trust property in the event that no such hospital existed at the time of his wife's death.

He provided further in Item VIII, that if at the time of the death of his wife there was no such hospital, the trustee should hold the trust fund until such a *hospital corporation* shall be organized, and that the trustee shall pay over to such *hospital corporation* the sum of $75,000, either in one cash payment or in installments as he may deem best for the purpose of erecting and equipping such a hospital and the buildings therefor.  He then proceeded to provide that thereafter the trustee shall pay 90 percent of the net income on the trust fund "for the use and benefit of such hospital."  He also provided that at the expiration of 15 years after the death of his wife, or at the end of five years after the organization of such *hospital corporation*, whichever shall be the later date, the trustee shall pay to such *hospital corporation* all of the principal of said trust fund for the purpose of operating and improving the hospital.

The specific issue to be decided by this court is whether a bequest, the sole expressed purpose of which is charitable in nature, to a charitable corporation to be organized after the death of the testator, is valid under the common-law rule against perpetuities, as codified in 1932, as G. C. 10512-8 (now R. C. 2131.08), even though such corporation

may not be organized within the period of time required by the rule against perpetuities.

The law on this question is settled. Under the rules expressed by the authors who have written in this field, and the decided cases, the law appears to be clear and, after research, no dissenting or minority view has been discovered.

The applicable rule of law appears in 2 Restatement of the Law, Trusts 2d, 314, Section 401j:

"If property is given in trust to be applied to a charitable purpose upon the happening of an event which may not occur within the period of the rule against perpetuities, and there is no intermediate gift, the trust fails if, but only if, the happening of the event is a condition precedent.

"If the settlor manifests an intention that the charitable trust shall not arise until the happening of the event, and the event may not happen within the period of the rule against perpetuities, the trust fails. Thus, if a testator bequeaths property in trust to apply it to the erection of a memorial window in a cathedral at a certain place if such cathedral should ever be built, and if the settlor did not manifest a general charitable intention (see Section 399), the trust fails.

"On the other hand, if the settlor manifests an intention that the charitable trust shall arise immediately, the trust is valid, even though he directs that the property shall not be used for the charitable purpose until the happening of an event which may not occur within the period of the rule against perpetuities. In such a case the happening of the event is not a condition precedent, but there is an immediate gift to charity with performance delayed. *The court may permit the property to be held by the trustees to await the happening of the event, but if in the opinion of the court the event is not likely to happen until the lapse of an unreasonably long time, the court may direct the immediate application of the property to a purpose falling within the general charitable intention of the settlor, thus applying the doctrine of cy pres.* See Section 399.

"*Thus, if a testator bequeaths money \* \* \* in trust for a charitable corporation to be organized after his death for the purpose of accomplishing certain charitable purposes, the gift is valid although it is possible that the corporation might not be organized within the period of the rule against perpetuities. In such a case there is an immediate gift for charitable purposes, and the court will direct that the property be conveyed to the corporation if it is organized within a reasonable time, or will frame a scheme for the application of the property to the designated charitable purposes and direct that it be administered by trustees appointed by the court, under the doctrine of cy pres.* See Section 399. In such a case the *organization of the corporation is not a condition precedent to the existence of the trust,* nor is it ordinarily such an essential part of the testator's intention as to preclude the application of the cy pres doctrine.''   (Emphasis added.)*

This statement of the rule in 2 Restatement of the Law, Trusts 2d, fits the instant case like the proverbial glove fits the hand. It is exactly in point. It is correct that the testator, in the instant case, sets out certain restrictions or conditions which he desired be placed upon the instrumentality through which the income and the principal of the trust was to be applied to the charitable purposes of the bequest. He carefully separated the statement of the desired restrictions or conditions upon the instrumentality from the statement of the purposes of the bequest. The trust authorities, as well as the cases, not only assert that a charitable corporation, which may not be organized within a period of time required by the rule against perpetuities, is not a condition precedent which will invalidate the trust under the rule, but they also assert that conditions put on the mode of application of the trust are not conditions precedent which will invalidate the trust under the rule against perpetuities.

4 Scott, The Law of Trusts (3 Ed.), 3163, Section 401.8, makes this point:

"\* \* \* Even if the corporation may not be organized within that period, the bequest is nevertheless valid if the

testator had a general intention to devote the property to the specified charitable purposes. In such a case there is an immediate gift to charity subject to no condition precedent; *and although the particular mode of application is subject to such a condition, that does not invalidate the gift.*" (Emphasis added.) See cases cited by Scott.

Here, the language of the trust instrument is unmistakably clear as to the general intent of the testator to devote the property to the specified charitable purposes. The purposes of the charity were separately set forth and described in the following language:

"* * * then such trustee shall pay over to such hospital corporation the sum of seventy five thousand dollars either in one cash payment or in installments as he may deem best for the *purpose of erecting and equipping such a hospital and the buildings therefor* and shall thereafter pay to such hospital corporation ninety percent of the net income on the trust fund so remaining until 15 years shall have elapsed from the death of my wife or until five years after the organization of such hospital corporation which ever shall be the longer period, such payments to be for the use and benefit of such hospital * * *." (Emphasis added.)

Finally the instrument provides for the payment of all the remaining principal of such trust "for the purpose of operating and improving such hospital."

Considering the language of the bequest in its entirety, it is plain that the general intent of the testator was to provide facilities, through the instrumentality of a charitable corporation, which would make medical care and health services in a hospital available and accessible to the people of the village of Franklin, Ohio, and the surrounding area.

*Ould* v. *Washington Hospital for Foundlings* (1877), 95 U. S. 303, is a case strikingly similar to the instant case in its pertinent facts and in the controlling legal issue which it presented to the court. In that case, the testator made a bequest of his property in trust to trustees in the following language (page 305):

218

"* * * in trust to hold the said fourteen lots of ground * * * as and for a site for the erection of a hospital for foundlings, to be built and erected by any association, society, or institution that may hereafter be incorporated by an act of Congress as and for such hospital, and upon such incorporation upon further trust to grant and convey the said lots of ground and trust-estate to the corporation or institution so incorporated for the said purpose of the erection of a hospital, which conveyance shall be absolute and in fee: *Provided, nevertheless*, that such corporation shall be approved by my said trustees * * *; and, if not so approved, then upon further trust to hold the said lots and trust-estate for the same purpose, until a corporation shall be so created by act of Congress, which shall meet the approval of the said trustees, or the survivor or successors of them, to whom full discretion is given in this behalf; and, upon such approval, in trust to convey as aforesaid; and I recommend to my said trustees to select an institution which shall not be under the control of any one religious sect or persuasion * * *."

The United States Supreme Court held that there was no violation of the rule against perpetuities and that the trust was, therefore, valid. The court reasoned that there was an immediate gift to charity and thus a vesting which eliminates any problem of remoteness. Therefore, the rule against perpetuities does not apply. The court said, at page 316:

"* * * The gift was immediate and absolute, and it is clear beyond doubt that the testator meant that no part of the property so given should ever go to his heirs-at-law, or be applied to any other object than that to which he had devoted it by the devise here in question."

In the instant case, as in *Ould*, the bequest was made to a hospital corporation *to be organized*.

In the instant case, as in *Ould*, the purpose for which the trust property was to be used was specified.

In the instant case, as in *Ould*, there was no intent manifested that the property was to ever go to the testator's heirs-at-law.

In the instant case, there was a provision that the hospital be located in Franklin, Ohio, or within one mile thereof; in *Ould*, the requirement was that the hospital be located upon 14 lots which were a part of the trust estate under the terms of the trust.

In *Ould*, there was a recommendation to the trustees to select an institution which "shall not be under the control of any one religious sect or persuasion."

In the instant case, there was a restriction placed upon the hospital corporation to be organized that it not, in the opinion of the trustee, be controlled by any religious organization and that, in the opinion of the trustee, it be properly organized, managed and controlled. However, it was provided further that the judgment of the trustee, as to whether it was controlled by any church or religious denomination and as to whether it was properly organized, managed and controlled, was to be absolutely conclusive and final.

In *Ould*, there was a restriction that the bequest was to be made to an association, society or institution to be incorporated by an act of Congress and approved by the trustees, with the further provision that if not so approved, then the trustees were to hold the property for the same purpose until a corporation shall be so created by an act of Congress which would meet the approval of the trustees.

The condition with regard to location of the hospital was more narrow and restricted in *Ould* than in the instant case.

The condition with regard to the hospital's proper organization, management and control, and the condition with regard to the hospital's control, directly or indirectly, by any church or religious denomination, are both conditions placed within the sole, absolute and final discretion of the trustee, as in *Ould*, where the organization of a hospital corporation meeting the conditions of the testator is placed within the sole, absolute and final discretion of the trustee. In the event such corporation does not meet the approval of the trustee, he is directed to hold the money

in trust until a corporation which meets his approval is formed.

The court held that none of these conditions were conditions precedent. The rule of law asserted by the Supreme Court was that there was an immediate gift to charity and that the restrictions and requirements were not conditions precedent, the mode of execution only being made dependent upon future events.

Bogert states the rule with equal clarity and discusses more fully the reason for the rule. 3 Bogert, The Law of Trusts and Trustees (2 Ed.) 747, Section 344:

"Quite often a settlor desires his charity to be administered through the medium of a corporation, and *directs* that one be organized, and that, when it is in existence, his executor or a trustee shall convey certain property to the corporation for the purpose of being held in trust by the corporation or being held by the corporation as its absolute property. Here, if it is held that the gift for charity is not to take effect until the corporation is organized, and there is no provision that incorporation shall occur within existing lives and twenty-one years, the difficulty with the rule against remoteness discussed in the next preceding section is encountered. The gift to charity is not sure to vest within existing lives and twenty-one years.

"In meeting this situation, the courts have exemplified their sympathy with charities and desire to support them wherever possible. They have usually held that the instrument manifested an intent on the part of the settlor that there should be an immediate gift to charity and that the organization of the corporation should result merely in a change in the method of administration. *If there has been the slightest basis for so doing, the courts have decreed that the settlor intended a single trust for charity, to start at the time his deed or will became effective,* to be administered by his executor or trustee until the incorporation occurred, *and then to be turned over to the newly formed corporation for execution.* Such construction of the settlor's desires avoids all remote vesting problems. The fund is vested in trustees for charity at once. The

equitable interest immediately passes to the portion of the community to be benefited and remains there indefinitely. The incorporation has no more significance than would the substitution of a new trustee. If the incorporation never occurs, chancery can exercise its well-recognized power to alter terms as to charitable trust administration and continue the original method of execution or substitute another. The extremely liberal and sympathetic construction given to these gifts obviates the necessity of making any exception to the rule against remoteness.'' (Emphasis added.)

This rule, which appears to be universally accepted, is based upon the courts' historic sympathy to charities and the courts' consistent desire to support them wherever possible.

The rationale used by the courts when the gift is to a charity corporation, which may not be organized within the time specified by the rule against perpetuities, is that the gift to charity is held to be immediate and that the property is held in trust by the trustee until the corporation may be organized or the court acts under the doctrine of cy pres. Thus, the courts hold that the property is vested and, therefore, there is no problem of remoteness.

Cases cited by Scott and Bogert involve fact situations where the corporation was organized before the action was initiated and the attack was made that under the provisions of the trust the corporation was not required to be organized within the period of time required by the rule and might not have been organized until after that time expired. *Ould* v. *Washington Hospital for Foundlings, supra.* Other cases involve fact situations where the corporation was not organized at the time the action was initiated and under the provisions of the instrument, as in the instant case, the corporation might not have been organized until after the time required by the rule had expired, or not at all. See *Franklin* v. *Hastings* (1912), 253 Ill. 46, 97 N. E. 265.

There is another persuasive reason why this court should not deviate from the settled rule of trust law which validates a bequest to a charitable corporation which has

not been organized at the time the trust comes into being, and which may not be organized within the time required by the rule against perpetuities. In 1967, the Ohio General Assembly enacted R. C. 2131.08(C), which requires, with regard to interests in real or personal property created by wills of decedents dying after December 31, 1967, reformation of any such interest which violates the rule against perpetuities. Although R. C. 2131.08(C) does not specifically mention charitable trusts, it impliedly codifies the settled judicial doctrine that a trust for the benefit of a charitable corporation not in existence when the trust arose and not certain to be formed within the period allowed by the rule is nevertheless valid. Hence, the statute mandates reformation of trusts similar to the Conover trusts but created after 1967.

As to testamentary trusts which came into being prior to 1968, it would be an unwise position for this court to reject the settled rule upholding trusts to charitable corporations to be organized after the trust arose. In a field as significant and sensitive as the field of trust law, this court should not take a position contrary to a widely accepted rule which has now been codified by our General Assembly. To do so would unsettle a portion of the law of trusts which lawyers can be expected to have relied upon in drafting instruments and interpreting the law for their clients.

As to the power of a court, in the absence of a statute, to reform an interest which violates the rule against perpetuities, see *In re Estate of Chun Quan Yee Hop* (1970), 52 Hawaii 40, 469 P. 2d 183.

The testator anticipated that some years might elapse before the hospital corporation would be organized. This is evident by the provision that "such trustee shall * * * pay to such hospital corporation 90 percent of the net income on the trust fund so remaining until 15 years shall have elapsed from the death of my wife or *until five years after the organization of such hospital corporation whichever shall be the longer period* * * *." (Emphasis added.)

The trustee, in accordance with the intent of the testa-

tor, held the trust funds and waited for such a hospital corporation to be organized.

After the appellants filed their action seeking to have the trust invalidated and the trust funds distributed to the heirs, the trustee filed his petition seeking instructions from the Probate Court as to the proper distribution of the trust funds. His petition was filed well within the time allowed by the rule against perpetuities.

It should be pointed out, however, that any delay on the part of the trustee in seeking instructions from the court with regard to the distribution to be made of the trust funds is not a legal ground upon which the court may invalidate the trust under the rule against perpetuities to defeat the intention of the testator and deny the beneficiaries the benefits of the trust. There are no cases or treatises which make delay on the part of the trustee grounds for invalidating the trust.

Appellants argue in their brief that the wills creating the trusts do not establish that the Conovers had a general charitable intent, and that, therefore, the doctrine of cy pres is inapplicable to them. Appellants state: "The purpose of the Conovers was narrow and specific: to have a hospital built in Franklin, Ohio or within one mile thereof that met all the conditions set out in the Conover wills." That statement is, of course, purely speculative, and it is not accepted by this court. Nothing in either Howard or Marie Conover's will specified that failure to fulfill their expressed intent—providing a hospital in or around Franklin—was to be followed by distribution of the trust property to their respective heirs. As stated in 4 Scott, The Law of Trusts, *supra*, 3094, Section 399.2:

"* * * It is ordinarily impossible to determine what disposition the testator intended should be made of the property if his particular purpose could not be carried out. Indeed, it is ordinarily true that the testator does not contemplate the possible failure of his particular purpose, and all that the court can do is to make a guess not as to what he intended but as to the what he would have intended if he had thought about the matter."

224

When "guessing" about the intent of a charitable testator, this court's attitude is epitomized by *McIntire's Adm'rs.* v. *Zanesville* (1867), 17 Ohio St. 352. In the early 1800's, John McIntire executed a will placing the greater part of his estate into a trust "for the use and support of a poor-school, which they [the trustees] are to establish in the town of Zanesville, for the use of the poor children in said town * * *." McIntire died in 1815. The trustees subsequently erected a building and maintained a "poor-school" therein. In 1856, however, the building was placed under the control of the local board of education, which discontinued its exclusive use as a school for poor children. The reasons prompting this transfer were "the flourishing condition of the public free schools of the city, and the repugnance of parents and children toward a distinctive 'poor-school' * * *." 17 Ohio St., at 353.

Transfer of the school to the board of education called into question the trustees' future duties, and hence they sought instructions from the judiciary as to the proper manner of executing the trust. In a ringing affirmation of the continued viability of the trust, this court, at page 363, "found" a general charitable intent in McIntire's will:

"But the purpose of the donor being to establish a '*school*' or '*institution*' for the use of poor children, and the state having supplied free schools for *all* children, what shall be done with the fund? Is the object of the charity exhausted, and must the fund be paid over to the heirs of the donor? We think not. We must look deeper than the mere words of this donation, and, through them, see its spirit. We must inquire what the donor himself would now direct, had he lived to witness the present *altered circumstances* of the case. His object was to *educate poor children to the extent of the fund bequeathed*, and the 'school' or 'institution' provided for in the will, were mere *means* to that end. Had circumstances remained unchanged, perhaps a free 'school' for poor children would have been the only necessary and appropriate instrumentality for that purpose, and the whole fund might have been exhausted, by thus merely remitting tuition fees to the

scholars who should attend. But this means having become impracticable, can no other be adopted to the same end? The law having anticipated and supplied the charity, so far as *free schools* are required, should not the trustees reach their hands further, and do more, and for that purpose resort to other means to effect, as far as the fund will go, the ultimate object of the donor? That object was, to instruct poor children *in spite of their poverty*. It was, so far to relieve their poverty as to make education accessible to them—to lift from them, as it were, that poverty which shuts out the light of knowledge, or so far to break through it, as to let in that light. This can be done by other methods than by merely remitting their tuition fees, which form but an inconsiderable part of the expenses of an education.''

Similarly, this court today holds that the wills of Howard and Marie Conover evidence a general charitable intent on their part to provide medical and health services to the residents of Franklin and those people living in the surrounding area. Erection and maintenance of a hospital within the geographical limits specified by the wills was the contemplated means to that objective. It will not, however, be considered the exclusive means. The express provisions of Item VIII of Howard Conover's will and Item V of Marie Conover's will established an intent on the part of the Conovers to provide the citizens of Franklin and of its immediate environs with a general medical and health facility. These express provisions allow this court to imply that had the Conovers foreseen the course of events which led to this litigation, they would have directed that the trust property be utilized to provide medical and health services through a medium other than a hospital located in or near the small municipality of Franklin.

Since a general charitable intent can be implied from the express provisions of the Conover wills, and since the charitable trusts were not conditioned upon failure of a prior noncharitable disposition of the trust property, the rule against perpetuities was not violated by the Conover trusts. However, this court agrees with the Court of Appeals that ''this case cries out for the application of the

doctrine of cy pres.'' The Conover trusts were created almost 30 years ago, and there is still no hospital or hospital corporation satisfying the terms of the trusts. It is time to distribute the trust property in a manner which comports with the general charitable intent of the Conovers.

A trial court is the proper forum in which evidence can be adduced and a decision reached on the question of distribution. For that reason, the Court of Appeals was correct in remanding these consolidated cases to the Probate Court of Warren County for further proceedings. The Probate Court should take whatever steps are necessary to notify the community, on a county-wide basis, of the purpose of the further proceedings. Interested persons should be allowed to submit and argue for the adoption of specific distribution schemes.

In framing its final order of distribution, the Probate Court's duty is to effectuate the general intent of the Conovers to provide medical and health services to the residents of Franklin and its immediate environs. In performing this duty, the court must attempt to respect the desires of the Conovers that such services be provided through nonprofit, nonreligious organizations which are available and accessible to the residents of Franklin and the surrounding area.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed, and the cause is remanded to the Probate Court of Warren County for further proceedings.

*Judgment affirmed.*

HERBERT, CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.

PAUL W. BROWN, J., dissenting. In my view, the language of the wills involved herein is totally defective. It requires the trustee to *hold* the estate until the building of a special hospital by someone in such a way as to satisfy the criteria contained in the wills. Distribution to charity is conditioned upon this event. The wills do not provide for any other distribution.

No perpetuities cases, such as this one, involving gifts for charitable purposes that are conditioned upon the occurrence of events that might occur, if at all, at a time beyond the period of the rule against perpetuities, can be found in Ohio. But a fact pattern strikingly similar to the Conover trusts was considered by the Supreme Court of Kansas in *Malmquist* v. *Detar* (1927), 123 Kan. 384, 255 P. 42. There, the testator gave $10,-000 "to the board of trustees or other managing body in charge and control of the first public hospital which shall hereafter be established in Kinsley, in Edwards County, Kansas, to be used to apply upon the cost of construction of a suitable building for such hospital * * *. In the event that no such hospital shall have been established in Kinsley at the date of my death, then * * * I direct that said sum shall be taken and held by my executor and his successors, in trust * * * and whenever such a hospital shall be established in said county and city, then said executor or his successors shall pay over said sum * * * to the board of trustees or other managing body in charge and control of such hospital * * *."

The Supreme Court of Kansas found that the attempted gift violated the rule against perpetuities, because vesting of the fund depended on a future contingent event that might never occur. The court, at page 385, stated:

"At the date of the testator's death no hospital had been established in Kinsley, and no facts were known from which it could be predicted that a hospital might be established in Kinsley at any future time. *The gift was one for a charitable purpose, but not to the executor of the will. Neither he nor his successors in trust may establish a hospital.* They are merely managing trustees, to invest the fund and keep it intact until a donee with capacity to take comes into existence. The court has no power to appoint a trustee who may devote the fund to the designated purpose, because of the form of the gift. Some one, a private corporation or other business association, an individual, or the county or city, must

establish a hospital. The fund shall then be paid over to the board of trustees, or other managing body in control of the hospital, to aid in its construction. While the court can keep in existence a trustee who shall perform the functions of the executor and his successors, it can empower no one to establish a hospital * * *."

The treatise writers have recognized, and agree with, the law as found by the Kansas court in *Malmguist, supra.* Bogert, Trusts and Trustees, and Scott, The Law of Trusts, agree that a gift for a *charitable purpose* which is conditioned on the happening of an event that might occur at a remote time, if it occurs at all, is void. 3 Simes and Smith, the Law of Future Interests (2 Ed.), Sections 1281, 1282 and 1285,[1] and 2 Restatement of the Law, Trusts 2d, 314, Section 401, comment j, are in accord.

Bogert says:

"* * * [T]he settlor may provide for the * * * springing up of a charitable trust at a future date, without creating any precedent interest. * * * [H]e may devise his farm to trustees for a nurses' home if a hospital is ever established in the city of his residence. * * * There is no certainty that the event will occur within any particular lives in being and twenty-one years. * * * *The gift to the trustees for charity * * * is therefore 'remote' and void.* * * *" (Emphasis added.) 3 Bogert, Trusts and Trustees (2 Ed.), 743, Section 343.[2]

---

[1] Simes and Smith, The Law of Future Interests (2 Ed.), Section 1285 states:

"In order to sustain gifts to charities, courts sometimes employ the cy pres doctrine to the effect that, if a gift to charity cannot be carried out in precisely the manner specified by the settlor, the court may authorize the trustee to carry it out as nearly as possible, where the plan approved is in accordance with the general charitable purpose expressed. * * * If, however, the court concludes that the formation of a particular corporation, whenever that may occur, is a condition precedent to the charitable gift, then it is void." See *First Camden National Bank & Trust Co.* v. *Collins* (1933), 114 N. J. Eq. 59, 168 A. 275, reversing 110 N J. Eq. 623, 160 A. 848.

[2] Bogert & Bogert, Law of Trusts (1973), Section 68, states:

"With one exception, the rule against perpetuities having to do with the vesting of contingent interests applies to gifts in trust for

Scott is to the same effect:

"In some cases it is more doubtful whether there is *an unconditional gift to charity with payment postponed or whether the gift is subject to a condition precedent which may not be performed within the period of the rule against perpetuities and is therefore invalid.* This question arises where money is left in trust to assist a church or hospital or school or other institution *if* such institution should

charity, to gifts to charitable corporations, and to gifts following charitable trusts. The wording of the gift must be such that the contingent gift will become vested, if it ever vests, at a date measured by lives in being and/or twenty-one years.

"The exception exists in the case of a gift to or in trust for one charity, followed by a contingent gift to or in trust for a second charity, to take effect on the happening of a certain event. In this case the event need not be one certain to occur within a time measured by lives in being and/or twenty-one years, but may be limited to happen at a remote or uncertain future time.

"* * *

"* * * The statement is frequently found in the decisions that the rule against perpetuities does not apply to charitable trusts. 'It is common knowledge that the rule as to perpetuities does not apply to property given to charities.' [See *Lindley*, L. J., in *In re Tyler* (1891), 3 Ch. 252, 257. See, also, *Trustees of New Castle Common* v. *Megginson*, 1 Boyce, Del. 361, 77 A. 565, 570, Ann. Cas. 1914A, 1207; *Bauer* v. *Myers*, 244 F. 902, 157 C.C.A. 252. See, also, West's Ann. Cal. Civ. Code, Section 715 (no perpetuity allowed except for 'eleemosynary purposes').] But, for the reason that 'the rule against perpetuities' has in some cases been an ambiguous phrase, these statements have caused much confusion of thought. In some instances the rule against perpetuities means, to the court using it, the rule against remoteness of vesting [see Section 50]; in other cases it means a rule against suspending the power of alienation; and in other instances it may have meant a rule regarding the duration of trusts [see Section 52]. As had been said by a Maine court: 'The statement is often found in the books that the law against perpetuities does not apply to public charities. But the statement is misleading. It is undoubtedly true that the principle of public policy, which declares that estates shall not be *indefinitely inalienable* in the hands of individuals, is held inapplicable to public charities. But it must be remembered that the rule against perpetuities, in its proper legal sense, has relation only to the time of the vesting of an estate, and in no way affects its continuance after it is once vested' [citing Whitehouse, J., in *Brooks* v. *Belfast*, 90 Me. 318, 324, 38 A. 222].

at any time be established. If the gift is contingent upon the establishment of the institution, it fails because the contingency is too remote. * * *"

(Emphasis added.) 4 Scott, The Law of Trusts (3 Ed.), 3165, Section 401.8.

The majority fails to distinguish between cases in which the charitable gift is made to trustees for a corporation *to be* organized after the death of the testator, and those in which the charitable gift is to trustees for a corporation *if* organized.

Although the syllabus language correctly states the law, that law does not apply to the facts of this case, wherein the language of the wills is conditional. This being true, they cannot be construed to constitute immediate gifts. The language of the Restatement quoted with approval by the majority therefore applies, and these trusts must fail.

Nor do those wills to which the majority points, and in which there is a *direction* that a corporation be organized for the charitable purpose, parallel the Conover wills, which give their trustee no such authority. As the issue is stated in the majority opinion, each Conover will was "a bequest * * * to a charitable corporation to be organized af-

---

. "With respect to the application of the rule against too remote vesting to charitable trusts, four situations may arise: * * * (3) an instrument may provide for the vesting of property in a trustee for charitable purposes at a future time * * *.

"* * *

"In the third situation are cases where no present gift to charity is made but provision is made for a possible future gift to trustees for charity or to a charitable institution, if a described event happens, for example, if a symphony orchestra is ever established in Melbourne, Australia [citing *In re Dyer* (1935), Vict. L. R. 273], or if a hospital is organized in a named town [citing *Malmquist* v. *Detar*, 123 Kan. 384, 255 P. 42]. Here the gift to charity is contingent until the occurrence of the event, and, since there is no way of computing the time which will elapse and no guaranty that the condition precedent to the gift will ever transpire, there is an obvious provision for a contingent interest which is not certain to vest within the period of the rule and the gift is void [citing *Chamberlayne* v. *Brockett* (1872), 8 Ch. App. 206; *Jocelyn* v. *Nott*, 44 Conn. 55]."

ter the death of the testator.'' I find no such testamentary language or intention in the Conover wills.

In my view, the majority opinion ignores rather than ''avoids'' the problem of remote vesting explicit in these instruments.

*Ould* v. *Washington Hospital for Foundlings* (1877), 95 U. S. 303, cited prominently by the majority, requires some comment. One should note that although it is a United States Supreme Court case, it is not one which is controlling upon this court. Its rationale turns, in part at least, upon the fact that the case was brought after the use had been ''consummated'' and was no longer ''in fieri,'' for the testator died April 1869. On the 22nd of April, 1870, Congress passed an act incorporating a hospital for foundlings in the city of Washington. On the 4th of April, 1872, the trustees conveyed the property to the hospital and the plaintiff's action of ejectment was instituted thereafter.

It is also noteworthy that Justice Swayne recognized the proposition of remoteness of vesting with the following:

''There may be such an interval of time possible between the gift and the consummation of the use as will be fatal to the former. *The rule of perpetuity applies as well to trust as to legal estates.* The objection is as effectual in one case as in the other. If the fatal period may elapse before what is to be done can be done, the consequence is the same as if such must inevitably be the result. Possibility and certainty have the same effect. Such is the law upon the subject.''

Cy pres is not applicable to the Conover trusts because the Conovers anticipated the nonexistence of a qualifying hospital at the death of Marie Conover, and expressly provided in detail for the conditions under which a hospital founded thereafter could qualify for the intended gifts of residue.

Any disposition of the Conover trust funds resulting from the application of cy pres will necessarily conflict with the intention of the Conovers. ''* * * The theory un-

derlying the application of cy pres is that the court is doing and fulfilling the intent of the testator." *Craft* v. *Shroyer* (1947), 81 Ohio App. 253, 262.

A *general* charitable intent is helpful for the purpose of validating a charitable trust which violates the rule against perpetuities, in those cases in which the facts call for *distribution* of the estate to a charity, and in which distribution becomes impossible.

Even so, I find no such general charitable intent here.

The conditional object of the trusts herein is to benefit a non-profit hospital at, or within one mile of, Franklin, Ohio. The trust provisions set up progressively stringent restrictions which, in summary: (1) prohibit direct or indirect control by a church or religious denomination; (2) require such hospital to be properly organized, managed and controlled; (3) *impose conclusive judgment discretion on the trustee with respect to the previous listed qualifications;* and (4) specify that, if no qualified hospital exists at each decedent's death, the funds are to be held until such qualified hospital exists.

The creation of the trusts begins with the specific, which is a nonprofit hospital at, or within one mile of, Franklin, Ohio. The remainder of the provisions applicable thereto impose limitations on that specific object, to a degree that reflects the primary concern of the Conovers for the achievement of a particular and precise goal, the nonattainment of which after all these years argues the total inefficiency of the charitable design, the lack of need for such a facility, the lack of public interest, and even renouncement by the prospective beneficiaries of the proposed trusts.

The difficulty of either triggering a request for cy pres, or of applying it to so narrow a purpose once requested, is apparent.[3]

[3]In *Cheney* v. *State Council of Ohio Junior Order U.A.M.* (1959), 31 Ohio Law Abs. 395, a testatrix left money to three Marion, Ohio, organizations to which her late husband had belonged. Because one cf the local organizations had gone out of existence, its statewide

The judgment validates ineptly drawn and defective instruments which have permitted the estates to remain in limbo for a period of more than 30 years. The trusts will vest for the first time after remand and upon application of cy pres by the trial court. I suggest that there are other funds which in similar circumstances become personal fiefdoms of the draftsman or of a trustee of his choice, persisting not for a public benefit but for a private one.

In this case, the plan's general charitable intent is questionable. The plan's inefficiency is evident, and it is a classic violation of the rule against perpetuities. Its validation is destructive of the interpretive criteria heretofore applied.

The judgment of the Court of Appeals should be reversed.

---

"parent" sought the application of cy pres. The court refused, declaring, at page 398, that the testatrix had "limited the objects of her charitable bounty to certain religious and fraternal orders in Marion, Ohio."

In *Allen* v. *Bellefontaine* (1934), 47 Ohio App. 359, and *Murr* v. *Youse* (1946), 52 Ohio Law Abs. 321, trusts were established to erect or utilize specific buildings and property. In *Allen*, a testatrix left her house, estate and grounds to a group of doctors, for meetings, research work, and a hospital. In *Murr*, a testator left $5,000 for the construction of a library. In neither case could the desired purpose be fulfilled. Finding no general charitable intent, in each case the court refused to apply cy pres.

Ohio courts have continued to look both to the circumstances surrounding testators, and to their will documents, in determining intent relative to the application of cy pres, without undue reverence for the fact that a charitable trust was involved. See *Allen* v. *Bellefontaine*, *supra*; *Murr* v. *Youse*, *supra*. In particular, note *Heinlein* v. *Elyria Savings & Trust Co.* (1945), 75 Ohio App. 353, where the court stated, at page 362:

"* * * A reading of the will exhibits a clear and unqualified expressed intention to restrict his gift, and the use of particular property for a particuar, specified purpose. It was no part of his plan, in the event of the failure of the charity, which he so meticulously arranged, that that part of his estate should be used in any other manner. The purpose and intent of the testator, we believe, is not left to inference or doubt. * * * he had no secondary or broader plan."