AMERICAN DIABETES ASSOCIATION, INC., APPELLANT, *v.* DIABETES SOCIETY OF CLINTON COUNTY, APPELLEE.

(No. CA85-11-025 — Decided May 27, 1986.)

*Dennis Pusateri,* for appellant.
*Walter E. Schutt,* for appellee.

JONES, J. This case involves an appeal from the Clinton County Court of Common Pleas concerning a declaratory judgment action between plaintiff-appellant, American Diabetes Association, Inc., and defendant-appellee, Diabetes Society of Clinton County, which sought an adjudication and determination of the parties' respective rights involving a charitable bequest.

The matter was submitted on stipulated facts which provide us with the following account pertinent to the resolution of the issues raised herein.

Appellant, American Diabetes Association, Inc., a non-profit corporation licensed to do business in Ohio, and the American Diabetes Association, Ohio Affiliate, Inc., are the successors in interest to the American Diabetes Association, Cincinnati Affiliate, Inc. (hereafter "Cincinnati Affiliate"). The Cincinnati Affiliate was one of appellant's local and regional subdivisions charged with the administration of funds and programs for research into the treatment, causes, and cure of diabetes and the treatment of diabetics. Appellee is presently a non-profit unincorporated association seeking incorporation.

On June 16, 1979, Barbara Waddell, a resident of Clinton County, Ohio, executed her last will and testament. In its general terms, the will provided for a series of bequests to numerous individuals and charitable organizations. Specifically, Item 21 of the will provided for the following bequest:

"I give, devise and bequeath to the DIABETES FUND OF OHIO, Clinton County Division, the sum of TEN THOUSAND DOLLARS ($10,000.00) in cash to be used for such purposes as its Board of Trustees may deem proper."

In addition, Item 28 named the Diabetes Fund of Ohio, Clinton County Division, as a residuary beneficiary along with several other charitable organizations. Five months later, on November 17, 1979, Waddell executed a codicil to the June 16 will. The codicil provided, among other things, that several of the bequests, including that in Item 21 of the will, were to "* * * be transferred and retained and used solely by the local divisions and local units of the named organizations to aid in satisfying any and all local needs as those local divisions and local units best see fit."

Following Waddell's death, the will was admitted to probate in January 1980. The first distribution of $10,000 was sent to the Cincinnati Affiliate, although the record does not reflect the date of that distribution.

The initial meeting of any local Clinton County diabetes organization was held on February 26, 1981 with eleven interested Clinton County residents and two of appellant's representatives present. From that time, appellee, then known as the American Diabetes Association, Clinton County Chapter, functioned as if it were a local chapter of the Cincinnati Affiliate.[1] During 1981, appellee directly received a second distribution of $25,000 from the Waddell estate. Appellee forwarded the $25,000 to the Cincinnati Affiliate with a request to "hold the funds in investments," with the understanding that the Cincinnati Affiliate would "discuss Clinton County's use of both the principal and interest of this bequest. Such a decision * * * to * * * serve to clarify how these monies may be used."

In the fall of 1982, disagreements developed between appellant and appellee concerning the use of the Waddell monies. These disagreements appear to be related, in part, to financial difficulties which the Cincinnati Affiliate began to experience and which were made known to appellee through its president. The record also suggests that appellee experienced some difficulty in having its expenses approved for payment by the Cincinnati Affiliate. When the Cincinnati Affiliate requested appellee to reapply for continued associa-tion with the Cincinnati Affiliate, appellee refused.[2] During 1983, appellee established bank accounts in its own name and acquired an employer identification number.

In September 1983, appellee disassociated itself from the Cincinnati Affiliate out of fear that the Waddell money would be diverted to pay off the Cincinnati Affiliate's outstanding debts instead of being used for diabetes research and treatment in Clinton County. Appellee received a third distribution of over $34,000 from the Waddell estate in 1983 which it has since retained. Appellee then requested a return of the $35,000 which had previously been placed in the custody of appellant. Appellant has continued to retain custody of those funds.

After October 1983, the parties could not agree on the use of the money from the Waddell estate. This disagreement ultimately resulted in appellant's initiating an action in declaratory judgment to determine the parties' rights to the Waddell bequest.

On October 25, 1985, the trial court rendered its opinion in the matter. The court found that appellant, as a successor in interest to the Cincinnati Affiliate, took the Waddell bequest "subject to all of the conditions, limitations and restrictions" placed on the bequest by the terms of the will. The court went on to find that it was clear that Waddell intended the bequest for the use of the "local community" in dealing with diabetes and that the Cincinnati Affiliate was aware of such intent on the part of the testatrix. Thus, while the

---

[1] On October 13, 1983, appellee changed its name to "Clinton County Diabetes Association"; then on January 26, 1984, the organization changed to its present name of the "Diabetes Society of Clinton County."

[2] Appellant contends that it executed an affiliation agreement with appellee but appel-lant was unable to produce a signed copy of the agreement. Appellee has no record of an agreement and claims that such an agreement was never executed. Even absent a formal affiliation, the trial court found that the parties conducted their affairs as if such an affiliation existed.

Cincinnati Affiliate may have taken title to the bequest, the court held that:

"* * * the same was taken only as the constructive trustee for the local organization and since the local organization has chosen to disassociate itself from the national organization and, apparently, has the right to do so, [it is] now entitled to the possession of those funds for [its] own program and [is] entitled to an accounting of all funds previously received by the [appellant] and held in such constructive trust."

Appellant has appealed the trial court's decision and as its sole assignment of error claims that the trial court erred in imposing a constructive trust upon the funds acquired by appellant under the will of Barbara Waddell, claiming that it, rather than appellee, is the proper charitable beneficiary.

Since the trial court's decision was for the most part dependent upon its interpretation of Waddell's will and its findings regarding the testatrix's intent, we first review the will itself so that we can initially determine if the court was correct in its construction of the will. The cardinal rule in a will construction case is, of course, to ascertain the testatrix's intent. *Robertson* v. *Robertson* (Dec. 30, 1985), Butler App. No. CA84-11-128, unreported. Generally, the testatrix's intent will be determined from the language of the whole will read in light of the circumstances surrounding its execution. *Richland Trust Co.* v. *Becvar* (1975), 44 Ohio St. 2d 219, 73 O.O. 2d 512, 339 N.E. 2d 830; *Robertson, supra.*

We recognize that the case at bar is not a will construction action, but rather a review of a declaratory judgment. This distinction does not, however, alter the application of the general principles associated with will construction cases to the matter currently under consideration. As we previously stated in the case of *In re Trust of Selsor* (1983), 13 Ohio App. 3d 164, 165, 13 OBR 198, 199, 468 N.E. 2d 745, 747:

"* * * Although the primary purpose of the case at bar is to seek relief from a lower court order, [a party's] right to that relief cannot be fully adjudicated absent a construction of the will provisions in question. As such, we must first determine the intent of the testatrix. That intent is to be ascertained from the words contained in the will.* * *"

As stated, the testatrix's intent is to be ascertained, and to the extent possible, such should be determined from the instrument itself. *Hess* v. *Sommers* (1982), 4 Ohio App. 3d 281, 4 OBR 500, 448 N.E. 2d 494; *Robertson, supra.* However, this rule of construction is not absolute and the court is not limited to the four corners of the will to determine the testatrix's intent, *Roelofs* v. *Apple* (1975), 49 Ohio App. 2d 155, 3 O.O. 3d 202, 359 N.E. 2d 710, but may consider extrinsic evidence when a will is susceptible to various meanings. *Sandy* v. *Mouhot* (1982), 1 Ohio St. 3d 143, 1 OBR 178, 438 N.E. 2d 117; *Hess, supra.*

Barbara Waddell's will first provided for nine bequests to individuals referred to as the testatrix's "good friends." These bequests included gifts of cash, real and personal property, a release of indebtedness, and even a bequest of the testatrix's pet dog. These were followed by a series of seventeen bequests to charitable, religious and educational entities, all but two of which were located in Ohio. More specifically, in addition to the bequest in question, the testatrix left cash gifts to churches in her home town of Sabina, Clinton County; made bequests to hospitals in Clinton and neighboring Fayette County; and bequeathed money to the Clinton and Fayette County branches or units of the American Heart Association and the American Cancer Society. Waddell also provided for cash gifts to the Cincinnati, Ohio, branches of the Leukemia Founda-

tion and Muscular Dystrophy Foundation, and to the Shriners Burn Institute and Children's Hospital, both located in Cincinnati.

The codicil to the Waddell will emphasizes the testatrix's desire that the gifts to those nationally recognized charitable organizations be used solely by the local divisions or units of those organizations to satisfy local needs. Several of the bequests, although made to national charities, were given to the local or county units of those entities demonstrating an apparent desire to provide charitable assistance at the local level. Bequests to local units or chapters outside the immediate Clinton County area were apparently limited to those charities based exclusively in a location outside the Clinton County area or those without a Clinton County affiliate. It is obvious from the wordings of the individual bequests themselves, as emphasized by the codicil, that the testatrix intended that the bequest in Item 21 and the residuary bequest were to be used by the local community, through a local or county entity, for the purpose of fighting the disease of diabetes. We therefore conclude that the trial court was correct in reaching this same conclusion in its interpretation of the will.

Having determined that it was the testatrix's intent that the bequest to the "Diabetes Fund of Ohio" was to be used at the local level, we now consider the other issues raised by appellant: whether a charitable organization not in existence either at the time of the will's execution or at the time of the testatrix's death is entitled to the charitable bequest, and whether a constructive trust for the benefit of that organization may be imposed upon funds already received by a different organization.

In regard to the first issue, appellant contends that appellee may not receive the charitable bequest under the Waddell will since appellee did not come into existence until after the decedent's will

had been admitted to probate. The contention is made that the existence of the Cincinnati Affiliate, appellant's predecessor in interest, conformed to the testatrix's intent that the funds be used at the local or regional level. Had the decedent been aware of the Cincinnati Affiliate's existence, appellant argues, she would have had no objection to the money going to the Cincinnati Affiliate.

In *Rice* v. *Stanley* (1975), 42 Ohio St. 2d 209, 71 O.O. 2d 205, 327 N.E. 2d 774, the testator made a charitable bequest in trust to a charitable corporation to be organized after the testator's death. The Ohio Supreme Court held that even though it was possible that the charitable corporation might not be organized within the period of the rule against perpetuities, the bequest was nevertheless valid. The court found that there was an immediate gift for charitable purposes and that the property would be conveyed to the corporation if organized within a reasonable time and, if not so organized, then the court would frame and develop a plan for the application of the property to the designated charitable purpose.

Unlike the situation in the *Rice* case, the case at bar does not involve a bequest in trust. However, the bequest herein was for a charitable purpose and was intended by the decedent to be used at the local level by the Clinton County division of the charitable entity. We find that there was an immediate gift for charitable purposes upon the death of Waddell. That gift was to be used at the local level and the testatrix apparently believed that a local entity existed for diabetes research and treatment. Had a local charitable organization not existed at the time of the gift and had not been organized within a reasonable period of time following probate of the will, the funds could then be disbursed in a manner consistent with the charitable purpose intended by the decedent. In other words, had appellee not been organized

within a reasonable period of time, a distribution of the funds to appellant as to the only diabetes research and treatment organization in the area would be consistent with fulfilling Waddell's intent. However, appellee was organized for the benefit of diabetics in the Clinton County area and accordingly is entitled to receive the funds even though appellee was not organized until after the testatrix's will had been admitted to probate.

The question remains whether the trial court could impose a constructive trust for the benefit of appellee on the $35,000 in appellant's possession. A constructive trust is an equitable creature which arises by operation of law against one who holds the legal right to property which in equity and good conscience belongs to another. *Ferguson v. Owens* (1984), 9 Ohio St. 3d 223, 9 OBR 565, 459 N.E. 2d 1293; 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221. Although this type of trust is usually invoked when property has been acquired by fraud, it may be imposed where it is inequitable for one to hold property even though the property was acquired without fraud. *Ferguson, supra.* This would include situations where the property was acquired by mistake. See *Barnes v. Christy* (1921), 102 Ohio St. 160, 131 N.E. 352; *Steiner v. Fecycz* (1942), 72 Ohio App. 18, 26 O.O. 515, 50 N.E. 2d 617.

The record reflects a genuine concern on appellee's part that the funds currently in appellant's control would be used for purposes other than diabetes treatment and research in Clinton County, particularly to help bail the Cincinnati Affiliate out of its financial difficulties. Appellee turned the second distribution over to appellant under the apparent assumption that the money would be held for the benefit of the Clinton County organization to be used by appellee at a later date in order to combat diabetes in Clinton County. Based on the record, and the intent of Barbara Waddell as previously determined with regard to the bequest in question, the trial court acted properly in imposing a constructive trust on the funds in appellant's possession to ensure that the money was used in conformity with decedent's intent. Accordingly, appellant's assignment of error is hereby overruled.

*Judgment affirmed.*

KOEHLER, P.J., and HENDRICKSON, J., concur.